Argued February 4; decided April 27, 1896.

## MONTGOMERY *v.* PAGE.

[44 Pac. 689.]

1. Negotiable Instrument — Parol Evidence — Contribution.— In an action for contribution parol evidence is admissible to show that one who, before delivery, for the accommodation of the maker of a promissory note, guaranteed the payment thereof by indorsement, waiving protest, demand, and notice of nonpayment, is by separate verbal agreement a cosurety with one who signed upon the face thereof as a joint and several maker, but who was really a surety.

2. Contribution.— A special collateral agreement between parties who sign a note as guarantor and surety, respectively, to become cosureties, and share equally in any loss, renders them joint obligors, as between themselves, and will support an action for contribution.

3. Findings by Court — Nonsuit.— A special finding of the trial court in an action for contribution of the existence of a collateral agreement between a guarantor and a surety of a promissory note, making them cosureties as between themselves, will not be disturbed on appeal, in the absence of a motion for nonsuit against the plaintiff.

From Multnomah: Hartwell Hurley, Judge.

This is an action by James B. Montgomery against Charles H. Page to enforce contribution. It is the outgrowth of the conditions attending the execution and delivery of a certain promissory note, dated July fourteenth, eighteen hundred and ninety-two, calling for three thousand dollars, payable in sixty days, with interest, to the Security Savings and Trust Company, signed "H. M. Montgomery and Company, Henry M. Montgomery, James B. Montgomery by W. L. Boise his Attorney in Fact, Charles H. Page," and bearing the following indorsement: "For value received, I hereby guarantee the payment of the within note, and waive protest, demand, and notice of nonpayment thereof. C. H. Page of Astoria, Oregon." H. M. Montgomery and Company is a firm composed of Henry M. Montgomery and Charles H. Page, so that the note is signed by the firm and each of its members in their individual capacity. Among other things it is alleged: "That this plaintiff executed said note as an accommodation maker for the benefit of said H. M. Montgomery and Company and as surety thereto, and received no part of the money obtained upon said note; but that the said H. M. Montgomery and Company received the entire sum of three thousand dollars upon the said note from the said Security Savings and Trust Company; that before said note was signed by any of the parties thereto, it was agreed by and between the plaintiff and said C. H. Page of Astoria, Oregon, that both should sign said note as an accommodation to the said H. M. Montgomery and Company, and as cosureties between themselves, and that if the said

29 OR.— 21.

H. M. Montgomery and Company failed or neglected to pay said note, then the plaintiff and defendant each to be liable as between themselves for one half the amount of said note, and if either were obliged to pay said note the other should repay to the one so paying one half of the amount so paid; that the said C. H. Page of Astoria, Oregon, guaranteed the payment of said note as aforesaid as an accommodation to the said H. M. Montgomery and Company and as cosurety with the plaintiff." Issue was taken by the answer with these allegations, and a trial had before the court, resulting in findings and judgment for plaintiff, from which defendant appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John W. Whalley.*

For respondent there was a brief by *Messrs. Stott, Boise and Stout,* with an oral argument by *Mr. Raleigh Stott.*

Opinion by MR. JUSTICE WOLVERTON.

1. Plaintiff offered evidence of a verbal agreement with defendant of the nature set forth in his complaint, which was allowed by the court over the objections of defendant; and this constitutes the principal ground of error relied upon for reversal. This presents the question whether a person who, for the accommodation of the maker of a promissory note, guarantees the payment thereof by indorsement, waiving protest, demand, and notice of

nonpayment, before delivery, can be shown to be a cosurety with one who signed upon the face as a joint and several maker, but in reality as a surety, unless, at the time of assuming the obligation, there existed an agreement in writing between them to become cosureties, and to share in the loss, if any. In *Wade* v. *Creighton,* 25 Or. 455, (36 Pac. 289,) it is decided that a third person indorsing a note, waiving protest, demand, and notice of nonpayment, before delivery, for the purpose of giving the maker credit, must be considered as a first indorser. The indorsement here partakes of the nature of a guarantee, whatever might be held to be its legal effect, whether absolute or conditional, or, as some of the authorities put it, an indorsement with an enlarged liability. The contract of a guarantor, as distinguished from that of a surety, is that the principal or obligor will pay. The surety's obligation is to pay the debt. The latter's undertaking is absolute, and is to do the same thing and upon like conditions as the principal, while the former's insures the ability of the principal to perform, and is distinct and independent of the original contract. The contract of an indorser is also an independent undertaking, and, if demand, notice, and protest is waived, it creates an absolute liability to his immediate indorsee; an indorsement by a stranger, however, is irregular and anomalous, and the engagement thereof has been variously determined by different jurisdictions; and, as between the immediate parties, parol evidence is always admissible to free it of any ambiguity with which it

may be attended: Tiedeman on Commercial Paper, §§ 272, 273. The great weight of authority substantiates the doctrine that parol evidence is admissible to show the true relation subsisting between the makers of a promissory note when contribution is sought, and this whether their subscription appears to be that of principals or sureties. The reason upon which the rule is founded is that the note itself is the measure of the contract between the makers and the payee, and not between the makers themselves, and that their correlative and interdependent relations is a matter wholly collateral to the primary undertaking, so that parol evidence establishing such relations does not vary the terms thereof: 1 Brandt on Suretyship and Guarantee, §§ 29, 31; *Williams* v. *Glenn*, 92 N. C. 253 (53 Am. Rep. 416); *Mansfield* v. *Edwards*, 136 Mass. 15 (49 Am. Rep. 1); *Water Power Company* v. *Brown*, 23 Kan. 676; *Barry* v. *Ransom*, 12 N. Y. 462.

But can the true relations existing between makers and guarantors or indorsers, who are bound by different, distinct, and independent undertakings, be so shown? A leading case which would seem to support the affirmative of this proposition is *Phillips* v. *Preston*, 46 U. S. (5 How. 277,) which was an action by the first indorser against a second to compel contribution by virtue of a special agreement between them that they should each suffer one half the loss if any was incurred by reason of default by the maker. It was objected that the alleged special agreement was a verbal one, and could not be proven as in contravention of a written one be-

tween the parties or of the statute of frauds and
perjuries. The court says, at page 291: "But the
parol evidence here is not offered in any action on
the note, or to alter its terms or its indorsements;
nor is any prior or contemporaneous conversation
offered to vary the note, or its indorsement in an
action founded on either of them. But it is offered
to prove a separate contract, which was made by
parol, and is of as high a character as the law re-
quires in such cases." And it was accordingly held
that parol testimony was competent to show the
agreement. *Weston* v. *Chamberlin*, 7 Cush. 404, was
a similar action between first and second indorsers,
where it was said by METCALF, J., "The authorities
are decisive that the plaintiff ought to have been
permitted to prove that, as between him and the
defendant, they were, by virtue of a collateral
agreement, cosureties. * * * Proof of such oral
collateral agreement does not contradict nor vary
the written agreement. The two are distinct." See
also *Clapp* v. *Rice*, 13 Gray, 406. There it was held
that the relations between the parties could be
shown by parol to be that of cosureties, even if
the plaintiffs had been promisors, and the defendant's
intestate an indorser." And in *Ross* v. *Espy*, 66 Pa.
St. 481, (5 Am. Rep. 394,) it was held that "The
contract of indorsement is one implied by the law
from the blank indorsement, and can be qualified by
express proof of a direct agreement between the
parties, and is not subject to the rule that excludes
the proof to alter or vary the terms of an express
agreement." To the same effect see *Dunn* v. *Wade*,

23 Mo. 207, and *McCune* v. *Belt*, 45 Mo. 174. This latter case was an action by the drawer against an indorser. See also *Sturtevant* v. *Randall*, 53 Me. 149; *Smith* v. *Morrill*, 54 Me. 48; *Coolidge* v. *Wiggin*, 62 Me. 568; *Denton* v. *Lytle*, 4 Bush, 597, a case of drawer against indorser; *Edelen* v. *White*, 6 Bush, 408, also a case of drawer against indorser; *Nurre* v. *Chittenden*, 56 Ind. 462, a case of surety against indorser; *Harshman* v. *Armstrong*, 43 Ind. 126, also of surety against indorser; and *Easterly* v. *Barber*, 66 N. Y. 433.

The case of *Johnson* v. *Ramsey*, 43 N. J. Law, 280, (39 Am. Rep. 580,) is an authority against this doctrine, but it seems to stand alone so far as we have been able to discover, and no authorities are cited to support the view therein taken. However, the reasoning of Chief Justice BEASLY is cogent and strong and is entitled to much weight. The learned chief justice argues that by the act of indorsement the indorser enters into a substantive independent contract with the indorsee, and, although in blank, commercial law has fixed with absolute certainty the terms of the indorser's engagement. They are, *first*, that the bill or note will be accepted or paid; *second*, that it is genuine; *third*, that it is a valid instrument; *fourth*, that the ostensible parties are competent; and, *fifth*, that he has lawful title and right to indorse. Such being the case, the undertaking is as much a written contract as though all the terms had been expressly stipulated, and the rule that a written contract cannot be varied by proof of an oral agreement to the contrary is equally applicable

thereto. It may be conceded that such is the law
in all cases where it is sought to enforce the obli-
gation thus assumed; that is to say, if the action is
upon the bill or note, or the contract of indorse-
ment, such bill, note, or contract, express or im-
plied, is the measure of the recovery, and proof of
an oral agreement cannot be invoked to add to,
take from, or in any manner vary or change, its es-
tablished legal import. But this does not involve
a contract between successive accommodation in-
dorsers, or between an accommodation maker and
such an indorser to stand as cosureties and to
share in the loss if any should be incurred by the
transaction. Such a contract is collateral to that
arising from the execution of the note or the in-
dorsement thereof. As it pertains to successive in-
dorsers, the law fixes their liability in the inverse
order of their indorsement. This is the result flow-
ing from regular indorsements. If, however, the
indorsements are irregular, that is to say, they have
been made by third parties, not to affect a transfer
of the paper, but to create a liability for the accom-
modation of some one or more of the parties thereto,
the law attaches to the transaction a presumption
only, not an absolute result. This presumption is
differently declared in different jurisdictions.

This court, in harmony with the New York
doctrine, has declared such an indorser to be *prima
facie* a second indorser, and is visited with the
engagements that attach to such an obligation:
*Deering* v. *Creighton*, 19 Or. 120, (24 Pac. 198, 20
Am. St. Rep. 800,) but, even in an action by the

payee, this presumption may be rebutted, and he may be shown to be a first indorser, with the attendant obligations. See *Wade* v. *Creighton*, 25 Or. 455 (36 Pac. 289). So it has been held, as touching irregular indorsements, that, as between the maker or drawer and indorser, or a surety and indorser, or as between successive indorsers, the presumption which the face of the transaction imports may, as between accommodation parties to the paper, be rebutted, and their true relation shown to be that of cosureties. Thus it was held in *McNeilley* v. *Patchin*, 23 Mo. 43 (66 Am. Dec. 651), " When two or more persons are sureties for another, the law implies a promise from each to contribute equally toward any loss which may be occasioned thereby. If they become sureties by successive indorsements on mercantile paper,— as that is a form of contract, which, in general, binds the first to indemnify the second,— the law presumes that they mean to stand as they have placed themselves. But if there was an agreement between them to become indorsers for the accommodation of the drawer, the latter presumption is removed, and the original one restored." So it is said in *Sweet* v. *McAlister*, 4 Allen, 354, " Nothing can be plainer than that, in the absence of any proof to the contrary, the parties to a promissory note are liable on it according to the legal effect of the instrument; that is to say, the maker is liable to the payee and indorsees, the payee to the indorsees, and each indorser to the subsequent indorsees. It may be proved by parol that the relation of the

parties to each other is different from this; for
example, that the payee or indorsee was the real
principal, or that all the parties were joint princi-
pals, or some of them joint sureties," citing *Clapp* v.
*Rice*, 13 Gray, 406. There must have been, however,
at the time of entering into such relations, a con-
tract or agreement between the accommodating par-
ties, either express or implied, to become cosureties,
and to share in the loss which might result from
the obligations assumed, as without it the law fixes
their engagements, and the mere fact that they have
become parties for accommodation cannot change
the result: *McDonald* v. *Magruder*, 28 U. S. (3 Pet.
476); *McCarthy* v. *Roots*, 62 U. S. (21 How. 437);
*McCune* v. *Belt*, 45 Mo. 178; *Stillwell* v. *How*, 46 Mo.
589; *Kirschner* v. *Conklin*, 40 Conn. 81; *Hogue* v. *Davis*,
8 Gratt. 4. So it is that testimony of such a verbal
agreement is allowed to rebut a presumption, and to
prove a collateral fact, and the reasoning which sup-
ports an action upon a verbal collateral agreement
between cosureties who become joint or joint and
several makers for the accommodation of the prin-
cipal also supports the action between successive
accommodation indorsers, or between the drawer
or a surety and the indorser. Coming now to the
case in hand, the defendant's obligation is appar-
ently that of a guarantor, but there is no reason
why the true relation existing between him and a
surety may not be shown as well as if he was an
indorser. Both are substantive, independent con-
tracts, as they relate to the note itself. Primarily,
they constitute contracts with the payee, and pre-

sumptively between the accommodation parties, but in reality are subservient to any special contract entered into between the accommodating parties to be bound, *inter sese*, as cosureties.

2. But it is argued that defendant, as guarantor, is not jointly bound with plaintiff as surety or joint and several maker for the payment of the note, and hence they cannot be treated as cosureties, as the obligations of cosureties must be joint and not separate and successive. If, however, the special collateral agreement alleged to have been entered into between plaintiff and defendant is to stand as between themselves as cosureties, and is valid, and we have seen that it is, they are joint obligors as it concerns the collateral undertaking, while they may not be as it pertains to the payee, and this is sufficient to support the action.

3. A second contention is that there is no evidence showing any agreement between plaintiff and defendant such as set out in the complaint; but there was evidence offered which, to say the least, tended in some measure to establish the agreement, and the court below having specially found that such an agreement did exist, in the absence of a motion for nonsuit against plaintiff, we cannot look into the evidence or disturb the finding. The judgment of the court below will be affirmed.                                    AFFIRMED.