Argued March 25, decided April 29, 1913.

# NOBLE v. BEEMAN–SPAULDING–WOODWARD COMPANY.*

### (131 Pac. 1006.)

**Bills and Notes—Parties—"Indorser."**

1.   Under the provisions of the negotiable instrument law (Laws 1899, p. 18) that a person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor is deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity, a party who indorsed upon the back of a note, "I hereby guarantee payment of the within note," was not an "indorser," having indicated by the appropriate word "guarantee" his intention to be bound in that capacity and not as an indorser.

**Bills and Notes—Parties—"Accommodation Party."**

2.   Under L. O. L., Section 5862, providing that an "accommodation party" is one who signs as maker, drawer, acceptor or indorser for receiving value therefor and for the purpose of lending his name to some other person, one who, for the accommodation of the maker, guaranteed the payment of a note was not an accommodation party; the statute having limited accommodation parties to the four classes mentioned.

   [As to the nature of contract of maker or indorser of accommodation paper, see note in 31 Am. St. Rep. 745.]

**Bills and Notes—Order of Liability.**

3.   Under L. O. L., Section 6023, providing that the person primarily liable on an instrument is the one who, by the terms of the instrument, is absolutely required to pay the same, and that all other parties are secondarily liable, the liability of accommodation makers and an accommodation guarantor was successive and not concurrent; the accommodation maker being primarily liable and the guarantor only secondarily liable, in the absence of a special contract changing their liability.

**Bills and Notes—Order of Liability.**

4.   Accommodation parties to ordinary commercial paper are liable to each other in succession as their names appear upon the instrument, unless they specially agree that they are to be bound jointly and not severally, in which case they are entitled to contribution as among themselves.

**Evidence—Indorsers—Order of Liability.**

5.   An agreement between parties to negotiable instruments, to be equally liable instead of being liable to each other in succession as their names appear, may be proved by parol.

---

*Indorser of note as guarantor, see note in 18 L. R. A. (N. S.) 565.

   Transfer of title to note by indorsement in form of guaranty, see notes in 36 L. R. A. 232 and 41 L. R. A. (N. S.) 1009.—REPORTER.

**Bills and Notes—Order of Liability.**
6. That an accommodation guarantor of a note knew when he executed the guaranty that certain of the makers were accommodation parties did not make his and their liability concurrent instead of successive, in the absence of a special agreement.

**Appeal and Error—Review—Questions of Fact.**
7. The finding of the trial court on a question of fact amounts to a verdict and cannot be disturbed on appeal unless the court can say affirmatively that there is no evidence to support it.

**Bills and Notes—Actions—Sufficiency of Evidence.**
8. A finding against the contention of accommodation makers that they and an accommodation guarantor were to be concurrently liable was supported by evidence that the guarantor was a stranger to the real debtor, a corporation, while the accommodation makers were directors and interested therein.

**Pleading—Answer—Sham Pleading.**
9. In an action for the amount of a note, where, on the other pleadings and the evidence, it was undisputed that the note was given to a bank for a loan and guaranteed by plaintiff, who was compelled to pay it, the court would have been justified in disregarding as sham a defense which alleged that the note was given to plaintiff for a loan by him.

**Bills and Notes—Actions—Findings—Sufficiency.**
10. In an action by a guarantor of a note given by a corporation against accommodation makers, the finding that the corporation turned all its assets over to a trustee for the benefit of creditors, that a large number of its creditors signed an agreement with the trustee by which he was to reduce the assets to money and pay the creditors *pro rata*, who were to receive such payment in full of their claims, but that plaintiff never signed such agreement and never was paid anything on account of the note, was a sufficient finding as to defendant's contention that plaintiff assented to such agreement.

**Bills and Notes — Actions — Defenses — Settlement With Primary Debtor.**
11. A guarantor or indorser of a note, who at that time had not paid it, could not, by assenting to an agreement, by which creditors of the real debtor were to receive their *pro rata* share of its assets in full settlement of their claims, do anything, either favorable or unfavorable, to accommodation makers, and hence, in determining their liability to the guarantor it was immaterial whether he assented to such agreement or not.

**Pleading—Answer—Supplemental Answer—Necessity.**
12. Where, after the issues were made up between plaintiff and the answering defendant, plaintiff took a default judgment against another defendant, the answering defendant could not rely on such judgment as a bar to a recovery against him unless he pleaded it by a supplemental answer under L. O. L., Section 108, permitting material facts occurring after the answer to be pleaded by a supplemental answer.

**Bills and Notes—Joint and Several Liability.**

13. The makers of a note providing that, "For value received, I promise to pay," were jointly and severally liable to the payee.

**Bills and Notes—Joint and Several Liability.**

14. Where makers of a note were jointly and severally liable to the payee, their liability to a party who guaranteed payment was also joint and several.

**Judgment—Persons Concluded—Judgment Against One of Joint and Several Debtors.**

15. A default judgment against one of several parties jointly and severally liable on a contract was not a bar to a recovery against others of such parties.

**Bills and Notes—Payment by Guarantor—Amount of Recovery.**

16. An action by a guarantor of a note, who paid the note but did not take an assignment thereof against the makers, was not an action on the note, but was an action for reimbursement for the amount paid by him for the defendants, and hence he was not entitled to recover the attorneys' fees and interest stipulated in the note, notwithstanding L. O. L., Section 5954, providing that, where the instrument is paid by a party secondarily liable, it is not discharged, but that the party so paying it is remitted to his former rights as regards all prior parties, and may strike out his own and all subsequent indorsements and again negotiate it; this manifestly referring to indorsers for value who at some prior time owned the note, and not to accommodation parties who never had any "former rights."

[As to distinction between subrogation of surety and legal right to recover sum paid, see note in 134 Am. St. Rep. 566.]

**Bills and Notes—Amount Recoverable.**

17. A guarantor of a note, which provided for interest at 8 per cent, was entitled to recover interest from the date he paid the note at only 6 per cent under L. O. L., Section 6028, fixing the legal rate of interest at 6 per cent except on contracts where a higher rate is fixed by express agreement of the parties.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE BURNETT.

About March 30, 1908, the Beeman-Spaulding-Woodward Company, hereinafter called the corporation, applied to the Hibernia Savings Bank, to be called the bank, for a loan of $2,500. The bank officers drew up a note of that date, of which here follows a copy:

"$2,500.                     Portland, Ore., March 30, 1908.

"On demand, after date, without grace, I promise to pay to the order of Hibernia Savings Bank at the Hibernia Savings Bank, of Portland, Oregon, twenty-

five hundred dollars in gold coin of the United States of America, with interest at the rate of 8 per cent per annum from date until paid; value received. Interest payable quarterly, and if not so paid the whole sum, both principal and interest, to become immediately due and collectible at the option of the holder of this note; and I further agree to pay all taxes and assessments which may be levied or assessed to the holder of this note on account thereof; and in case suit or action is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit or action."

This note was signed by the corporation and forwarded by the bank to its correspondent at Seattle, Washington, with this writing on the back, to be presented to the plaintiff there for his signature:

"For value received, I hereby guarantee the payment of the within note at maturity, or any time thereafter, with interest at 8 per cent per annum until paid, and hereby waive demand, protest and notice of nonpayment, and consent that the payment of this note may be extended from time to time without affecting my liability thereon."

Noble refused to sign the writing last above quoted unless the defendants Julius Beeman, Lewis V. Woodward, and M. G. Smith, who were members of the corporation, would sign the note as makers, and it was returned to the bank. The three individual defendants then signed the note, which was again sent to Seattle, where Noble signed the writing on the back, and, after again receiving it, the bank paid to the corporation $2,500, the principal of the note. It is admitted by all parties that this money was borrowed by the corporation for its own use, and that neither the plaintiff nor any of the individual defendants received any of it, though the latter were members of the corporation. The interest was paid to March 30, 1909.

The complaint sets out the note and the writing on the back thereof in full, alleges the payment of the interest and that, the defendants having failed to pay the note, the bank compelled the plaintiff to pay the same, and he did pay it to the bank on April 14, 1910. It was agreed that he paid $2,700 on that date to take up the note, and he alleges that he has been and now is the owner and holder thereof. It is charged also that, by the terms of the note, the defendants promised and agreed to pay the bank the sum of $2,500 on demand, but that, although demand was made upon them by the bank, they had refused to pay the same or any part thereof; that the plaintiff never received any of the proceeds of the note but indorsed the same as stated for the accommodation of the defendants and to enable them to procure a loan of $2,500 from the bank. It is also averred that the plaintiff was compelled to employ a firm of attorneys to bring an action upon the note and agreed to pay them a reasonable attorneys' fee therefor, which the plaintiff alleges is $500. The plaintiff demands the amount paid by him on the note, together with interest at the rate of 8 per cent per annum from April 14, 1910, and for $500 attorneys' fees. The summons was served on the corporation and the defendant Woodward, respectively, May 5, 1910, and May 10, 1910, but neither of them answered. It was served upon the defendant Smith May 20, 1910, and he is the only person who answered in the action. The first answer was filed May 28, 1910. On October 13th of that year, summons having been served upon the defendant Beeman by publication, his default was entered and judgment taken against him for the sum demanded in the original complaint. On December 23d Smith filed an amended answer upon which the case was tried. He admitted the execution of the promissory note set out in the complaint, but says that he executed it only as surety for the corporation and with-

65 Or.—7

out any consideration to himself whatever. The execution and indorsement of the plaintiff's written guaranty of payment of the note as inducement to the bank to loan money to the corporation is also admitted, but Smith denies that it was an inducement to the bank to loan money to anyone except the corporation. The answer concedes that the bank compelled the plaintiff to pay the note on April 14, 1910, but denies that he is the owner or holder of it or as such is in possession thereof. The employment of the attorneys and the necessity therefor, the reasonableness of the fee of $500, or any other sum, are all challenged by the answer. Further answering the complaint, Smith avers, in substance, that the $2,500 included in the note of March 30, 1908, was loaned to and received by the corporation for its sole benefit, and no part of the same was ever received or used by Smith; that he signed the note as surety only for the accommodation of the corporation and without any consideration whatsoever; and that the plaintiff, both before and at the time he executed said written guaranty of payment of the note, and at the time he paid the same on April 14, 1910, had full knowledge and notice and well knew that said $2,500 was being loaned to the corporation alone for its sole and exclusive use, and that this defendant signed said promissory note as a surety only. As a second defense Smith avers substantially that the corporation borrowed said sum of $2,500 from the plaintiff for its own use and benefit alone, and gave the note, signed by itself as principal and by the other defendants as sureties, to secure payment of the same, and that, knowing all this, the plaintiff did on or about August 2, 1909, duly enter into an agreement with the corporation and its other creditors that it should assign all its property to S. C. Spencer in trust for the benefit of all said creditors to dispose of and convert the same into money, and, after deducting his necessary expenses in that behalf, to divide and distribute the resi-

due among said creditors *pro rata* in full payment of their claims against the corporation, and that said assignment of the assets of the corporation to Spencer should release the corporation from all liability on account of all claims of its said creditors against it. He further states that, in accordance with this agreement and with plaintiff's assent thereto, the corporation transferred all its property to Spencer, who has converted and is converting the same into money in execution of the agreement, and that by reason of the premises Smith is released and discharged from all obligations or liability on the note. The amended answer of Smith was traversed by the reply.

The cause was tried before the court without a jury, and the judge found facts substantially according to the allegations of the complaint, and in addition thereto found that Smith signed the note as surety only, receiving no part of the proceeds of the loan nor any consideration for signing it, and that he executed the same only as an accommodation maker for the corporation. The judge also made this finding: "That on or about August 2, 1909, the corporation turned all of its assets over to S. C. Spencer in trust for the benefit of the creditors of the corporation, and that said Spencer was to reduce the assets of said corporation to money and take out his reasonable charges and expenses therefor and in connection therewith and pay the creditors of the corporation *pro rata* out of the net amount realized, so that the creditors of the corporation would receive said *pro rata* share in full of their claims against it, and that a large number of the creditors of the corporation signed this agreement with said Spencer, but that the plaintiff herein never did sign it; that said Spencer entered upon the duties of his trust and has reduced some of the assets to cash, but that he never paid said plaintiff anything for or on account of the note herein nor anything to the Hibernia Savings Bank." The answering defendant made various objections to the find-

ings of the court, but the one principally relied upon is to the effect that it was not determined by the court whether the plaintiff assented to or became bound by the agreement between the corporation and its creditors and the transfer of its assets to Spencer as trustee in accordance therewith. The court disregarded all the objections to the findings and entered judgment against Smith for $2,700, with interest at 8 per cent per annum from April 14, 1910, and $275 attorneys' fees, with costs and disbursements. From this judgment the defendant Smith appeals.    MODIFIED.

For appellant there was a brief over the name of *Messrs. Watson & Beekman,* with an oral argument by *Mr. Edward B. Watson.*

For respondent there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble,* with an oral argument by *Mr. Schuyler C. Spencer.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It may be conceded that as to the bank the plaintiff, who signed the writing on the back of the note, and the defendants in this action, all of whom signed the note as makers, were all directly liable. Such is the doctrine taught by all the cases cited in the defendant's brief: *Hungerford* v. *O'Brien,* 37 Minn. 306 (34 N. W. 161); *Hecht* v. *Acme Coal Co.,* 19 Wyo. 10 (113 Pac. 786); *Walter A. Wood Co.* v. *Farnham,* 1 Okl. 375 (33 Pac. 867); *Roberts* v. *Hawkins,* 70 Mich. 566 (38 N. W. 575), and other cases. The question, however, here to be determined is not between the bank and the parties to this suit, but it is for us to decide what is the relation existing between the plaintiff, who signed the instrument on the back of the note, on the one hand, and the defendants here, who signed as makers, on the

other. In the first place, it is laid down in the case of *Staver* v. *Locke*, 22 Or. 519, 524 (30 Pac. 497, 498, 17 L. R. A. 652, 29 Am. St. Rep. 621), that "In determining the liability of a surety or a guarantor, it must be remembered that he is a favorite of the law and has the right to stand upon the strict terms of his obligation when such terms are ascertained."

1, 2. It is manifest, upon the face of the writings involved, that at the outset the parties intended to be bound to the bank in different capacities, for, as conceded by all parties, Noble refused to sign the contract of guaranty indorsed on the note, unless the individual members of the corporation, including the answering defendant here, should themselves sign the note, and it was only when the note was again presented to him with the signatures of the individual defendants as makers that he signed as he did. Our negotiable instrument law (Laws 1899, p. 27, § 63) provides: "A person placing his signature upon an instrument otherwise than as a maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Under this section it is plain that Noble was not an indorser, because he indicated by the appropriate word "guarantee" his intention to be bound in that capacity and not as an indorser. Section 5862, L. O. L., says: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him only to be an accommodation party." The code has thus limited accommodation parties to the four classes of maker, drawer, acceptor, or indorser. True enough, it has not made it unlawful for any person to enter into a contract of guaranty

as to the debts of another party, but by the law, "the mention of one being the exclusion of the other," such a guarantor is not an accommodation party. Although, by placing his name only on the back of the note, Noble would have been an indorser, he clearly excluded himself from that category by the terms of the writing which he signed, indicating his intention to be bound in a different capacity. So far as anything is concerned in this case, the writing which Noble. signed would have been equally efficacious if it had been inscribed on an entirely separate piece of paper, with appropriate words describing the instrument to be secured.

3–8. Taking Noble's agreement and the note together, nothing else being shown, his liability is not concurrent with that of those who signed the note as makers, but successive to theirs, and this would be true, in the absence of any other showing, even if Noble had only written his name on the back of the note before it was delivered to the bank and the money advanced thereon. The law of this state says that: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same": L. O. L., § 6023. On the face of the note this is the liability of the defendant Smith. The same section says further: "All other parties are secondarily liable." Even if Noble had merely written his name on the back of the note and thus became an indorser under the terms of Section 5896, L. O. L., he would still have been only secondarily liable, as respects the makers, and hence not in the same category with Smith. But if we should treat Noble as strictly an indorser and not a guarantor, as far as appears from the note itself and its indorsements, "it is the established rule that the parties to ordinary commercial paper, negotiated for value in the regular course of business, are liable to each other in succession as their

names appear upon the instrument; the acceptor of a bill or the maker of a note being the principal debtor and the indorsers being liable severally in the order in which their names are written. The same rule applies in the absence of special agreement to successive accommodation parties, and a subsequent accommodation indorser, who has been compelled to meet the obligation, may maintain an action upon the instrument against any prior accommodation party and recover the whole amount paid, although he knew that the latter's signature was given for accommodation merely. It follows that successive accommodation parties, acceptor and indorser, maker and indorser, or successive indorsers, are not to be considered as cosureties, and therefore they are not entitled to contribution among themselves unless they specially agree that they are to be bound jointly and not severally, but where such an agreement exists, contribution may be enforced and the agreement may be proved by parol or may be evidenced by the circumstances of the case'': 1 Am. & Eng. Ency. Law (2 ed.), p. 356. To the same effect is the doctrine taught by the case of *Montgomery* v. *Page,* 29 Or. 320 (44 Pac. 689). There Montgomery had signed a note as maker which had already been signed by a partnership in its firm name and by the individual partners. Montgomery was in fact a surety, and at the same time, as part of the transaction, the defendant Page wrote on the back of the note and signed these words, ''for value received I hereby guarantee the payment of the within note,'' and, having been compelled to pay the note, brought an action against Page and alleged that, at the time of the making of the note and the indorsement by Page, it was agreed between them that, in case either should be compelled to pay the note, the other would contribute half of the amount required to be paid. Based upon such an allegation, this court, in an opinion by Mr. Justice WOLVERTON, held that the agreement

could be proved by parol and could be relied upon to take the case out of the natural operation of the law upon the writings embodied in the note and the indorsement thereof. The contract raised by operation of the law between the makers of a promissory note and the indorsers thereof is that the liability is successive. This contract may be overcome and the natural operation of the law be superseded only by a special contract between the parties thus bound to pay the note.

Turning to the answer of the defendant Smith, we find it to be utterly silent about any agreement between himself and Noble about the relation to be sustained between each other as to the note, independent of the effect of the note itself and the contract indorsed thereon by Noble. All that the answer alleges in that respect is that Noble, at the time he executed the written guaranty on the note, knew that Smith was a surety or an accommodation maker and not a principal. Not having alleged any special agreement taking it out of the ordinary category, whereby Noble's liability would be subsequent to that of Smith, the latter could not resist the action of Noble against him on that point. Moreover, if this were an open question on the pleadings, the trial court found in accordance with the allegations of the complaint in that respect, and this amounts to a verdict which we cannot disturb, unless we can affirmatively say there is no evidence to support it. Evidence of a nature tending to support the findings of the court in this particular is found in the circumstance that Noble was a stranger to the corporation, while Smith himself was a director and interested therein; that Smith signed as a maker, while at best Noble was only an indorser. The result is the same whether we consider the matter as one of pleadings or one of evidence.

9–11. It is next contended that the assignment of the corporation's assets to Spencer, as trustee under the

agreement of August 2, 1909, constituted a payment of the debts and a release to the company and of the sureties as to all creditors of the company signing an agreement consenting thereto, and that the assent of Noble was a material issue upon which the court refused to find.   This contention is fallacious in at least two features: First, the answer upon which this contention is based alleges that the corporation borrowed the money directly from the plaintiff, and that the plaintiff accepted the promissory note as security for the payment of the loan, thus placing the plaintiff in the position of an original principal creditor of the corporation.   This is manifestly so contrary to the other pleadings of the parties, as well as the testimony in the case, that the court would have been justified in utterly disregarding the contention as sham.   In short, there is no testimony whatever tending to show that the plaintiff originally loaned the money to the corporation.   On the contrary, all agree that the money was advanced by the bank on the note, signed, as stated in the pleadings, by the defendants here, and the agreement of Noble indorsed thereon.   Further, the court did substantially determine the issue in the fourteenth finding of fact, in substance, that a large number of the creditors of the corporation signed the agreement with Spencer to convert the assets of the corporation into cash, but the plaintiff never did sign the agreement, and that nothing has ever been paid by Spencer to the bank or to the plaintiff on account of the note.   Secondly, whatever was done with Spencer about realizing upon the assets of the concern was agreed upon before the plaintiff had paid anything on the note and while he was still either guarantor or indorser, as the case might be.   He did not and could not release anything of value to the defendant Smith, for he had no control over the assets of the corporation, and was not in a position to exercise any control over them.   He

could not do anything either favorable or unfavorable to Smith in that connection at that time, and hence it is immaterial to consider whether he assented to the Spencer contract or not.

12. The defendant also maintains that the default judgment taken against Beeman operates to release Smith from any liability; in other words, that it is a bar to any judgment against Smith. Prior to the rendition of this default judgment against Beeman, the issues had been made up between the plaintiff and the defendant Smith. If he had intended to rely upon the Beeman judgment as a bar to a judgment against himself, Smith should have operated under Section 108, L. O. L., reading thus: "The plaintiff and defendant respectively may be allowed on motion, to make a supplemental complaint, answer, or reply, alleging facts material to the case, occurring after the former complaint, answer, or reply." This is a statutory rule analogous to the common-law plea of *puis darrein continuance,* and if a party would rely upon anything occurring since the issues were joined, it was his duty to bring it to the attention of the court by a proper plea: 31 Cyc., p. 493; *Trotter* v. *Stayton,* 45 Or. 301 (77 Pac. 395).

13–15. Again, the obligation of the defendant, which Noble guaranteed, was a joint and several obligation, being a note on which the words were, "For value received, I promise to pay." Noble stands in the situation of saying to the defendants: "I guaranteed the performance of your joint and several obligation. Having performed that obligation for you and in your place, I now demand of you that you perform the same to me as you should have done to the bank." Under such circumstances, the obligation which they assumed to him who stood sponsor for them is not materially different from that which they assumed to the bank. In

good reason, therefore, the obligation of the defendants to their guarantor Noble is joint and several. It presents a case within the meaning of *Sears* v. *McGrew,* 10 Or. 48, where it was held that, when the action was upon a contract joint and several, a several judgment would be proper, as the defendant might have been sued alone in said case; therefore judgment might be rendered against one or more without waiting for the final trial.

16. It is lastly contended that Noble was not entitled to recover from Smith any attorneys' fees, and this will be considered in determining what judgment should have been entered in the court below, as we are empowered to do under Article VII of the Constitution. Without having taken an assignment of the note, Noble is not the owner or holder thereof in the true meaning and intent of the law. In legal effect he is not bringing an action upon the note. It is said in Section 5954, L. O. L., that: "Where the instrument is paid by a party secondarily liable thereon it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements and again negotiate the instrument"—with certain exceptions not here material. It is argued that the right of again negotiating the instrument includes the right to bring an action upon it, from which it would follow that the present proceeding is directly upon the note entailing the allowance of attorneys' fees. Manifestly, this section refers only to indorsers for value and not for mere accommodation. An indorser for value at some time prior to his indorsement owned the note with the right to sue upon it at maturity. With this right he parted when he discounted the paper by indorsement to a purchaser for value, who in turn by like process may transfer the title becoming liable by his indorsement to the

new indorsee, and so on without limit until the maturity of the instrument. Then, whichever of the successive indorsers is compelled to pay is restored to his former rights within the meaning of this section, upon striking out his own and subsequent indorsements.

The case is entirely different, in reason, concerning an accommodation indorser or a guarantor. Neither of them has any "former rights," nor, indeed, any right whatever, until he pays the note or bill, and then it is the right of contribution or of reimbursement according to whether he is liable jointly with the others as among themselves or liable after them. So it is with the plaintiff here. He has performed his contract as a guarantor and is contending, not for the principal and interest and attorneys' fees provided for by the note, not for contribution from a cosurety, but for reimbursement or, as some authorities term it, "exoneration" for the amount which he paid for the defendants in execution of his contract of guaranty. As against the apparent makers of the note, he has no cause of action, except that arising upon the contract which he carried out. This contract with them does not provide for an attorney's fee. As we have seen, he is not an accommodation party, being neither a maker, a drawer, acceptor, nor indorser. By his contract he excludes himself from all those classes who alone, under Section 5862, are accommodation parties. Strictly speaking, he cannot enforce the terms of the note. He can only rely upon the contract which he himself made, and cannot extend its terms to matters not included therein. He is entitled to reimbursement and no more.

17. The amount he paid became due to him from and after April 14, 1910, the date he paid it. Interest in such cases is reckoned at 6 per cent per annum: L. O. L., § 6028.

The judgment will be modified and one entered here in favor of the plaintiff and against the defendant for $2,700, with interest thereon at the rate of 6 per cent per annum from April 14, 1910.　　MODIFIED.

MR. JUSTICE MOORE took no part in the consideration of this case.　MR. JUSTICE BEAN reserves the right to dissent.