COMMONWEALTH NAT. BANK OF DALLAS v. GOLDSTEIN et al.*
(No. 9096.)

(Court of Civil Appeals of Texas. Dallas. March 29, 1924. Rehearing Denied April 26, 1924.)

**I. Bills and notes ⊗⇒96—Stockholder held not an "accommodation maker" of note executed for corporation's benefit.**

Stockholder executing his notes to a bank to be discounted, proceeds to be paid to his corporation and repaid to him from deposits of corporation, from time to time, was not an "accommodation maker"; his interest in corporation making him liable as principal debtor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accommodation Maker.]

**2. Bills and notes ⊗⇒96 — "Accommodation maker" defined.**

To constitute one an "accommodation maker," he must not be the recipient of any consideration, but, on the contrary, signing of note must be void of present or anticipated personal profit, gain, or advantage, viz., an act to oblige the performance of an unselfish and friendly service for another, without receiving or expecting quid pro quo.

**3. Bills and notes ⊗⇒122—Guaranty clause held to take note out of category of accommodation paper.**

A clause, "Each of the makers hereof and indorsers hereon waive diligence, demand, notice of nonpayment and protest on this note, and guaranty its payment at maturity or at any time thereafter," held to preclude signer from claiming to be accommodation maker.

**4. Appeal and error ⊗⇒1097(5) — Supreme Court opinion, on certified questions, binding on Court of Appeals on second appeal of same case.**

A Supreme Court opinion, answering questions certified from the Court of Appeals, on former appeal of the same case, is binding on the latter court, on second appeal, in so far as applicable to the question certified, in view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1619 and 1625.

**5. Banks and banking ⊗⇒116(2)—Knowledge of president and general manager, of arrangement to discount notes for benefit of corporation held imputable to bank.**

Where the vice president and general manager of a national bank agreed to discount accommodation notes of a corporation stockholder, and pay the proceeds to his corporation, repaying the stockholder from deposits made from time to time by the corporation, the vice president's knowledge of the transaction was imputable to the bank.

**6. Appeal and error ⊗⇒173(9) — Estoppel not pleaded or raised at trial, not available on appeal.**

In an action on a note, an estoppel, not pleaded nor raised at the trial, is not available on appeal.

**7. Estoppel ⊗⇒90(6)—Estoppel of director to claim payment of note held not shown by acquiescence in company's act in diverting funds which should have been applied thereto.**

Director of corporation executing, as maker, note to a bank, proceeds to be paid to corporation and repaid to him from corporation deposits, held not estopped by his knowledge as director that company had been checking out daily deposits which should have been applied to note, and his failure to object thereto, from alleging payment of note, since deposits became automatic credits, which bank's unauthorized application did not destroy.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the Union National Bank of Dallas against A. Goldstein and another, in which the Commonwealth National Bank of Dallas intervened as plaintiff. Judgment for defendants, and intervener appeals. Affirmed.

J. N. Townsend, of Dallas, for appellant.

Victor Hexter and Etheridge, McCormick & Bromberg, all of Dallas, for appellees.

VAUGHAN, J. The Union National Bank of Dallas instituted this suit against A. Goldstein and I. B. Walker by petition filed on the 14th day of February, 1911, and, in substance, charged that Goldstein and Walker were indebted to it on a promissory note executed by them payable to the order of the Union National Bank for the principal sum of $5,000, due on demand, and bearing interest from maturity at the rate of 8 per cent. per annum until paid, and providing for 10 per cent. additional on the full amount due as attorney's fees if placed in the hands of an attorney for collection. On May 20, 1911, appellant filed its plea of intervention, alleging that about the 1st day of November, 1911, said Union National Bank indorsed, transferred, and delivered said note to intervener, whereby intervener became the legal and equitable owner and holder of said note for a valuable consideration and entitled to all the relief prayed for by the said Union National Bank; and in substance alleged practically the same facts alleged by Union National Bank, and prayed for judgment in the amount of its debt, interest, attorney's fees, costs, and for general relief.

Appellant Goldstein filed his answer on April 2, 1912, admitting the execution of the note sued on in conjunction with his codefendant Walker, and further alleged:

"That prior to the 30th day of August, 1909, the said L. Wenar Millinery Company and the said Union National Bank of Dallas, acting through its vice president and general manager, I. B. Walker, and this defendant, entered into an agreement, by the terms of which this defendant agreed to execute to the Union National Bank and in conjunction with his codefendant, I. B. Walker, and for the accommodation of the said L. Wenar Millinery Company, to a limited extent and as occasion should arise, notes to be discounted by the said Union National Bank and the proceeds to be used by the said L. Wenar Millinery Company in transacting its business in some other way than paying any part of its indebtedness to the said Union National Bank, which was within the loaning power of said bank to lend to the said millinery company, and in consideration of this defendant executing paper as aforesaid for the accommodation of said L. Wenar Millinery Company, the said L. Wenar Millinery Company agreed with this defendant to make deposits in the Union National Bank of Dallas from time to time in the usual course of business, and that said deposits when so made should be applied to the extinguishment pro tanto of any note made by this defendant under the said agreement until the same was fully liquidated and extinguished, and that no part of said deposits should be applied to the liquidation or extinguishment of any debt or demand existing in favor of the Union National Bank of Dallas against said L. Wenar Millinery Company or be checked out for any other purposes of the said L. Wenar Millinery Company, and the said Union National Bank of Dallas agreed to discount said paper as it might be made by this defendant and to receive the deposits of the said L. Wenar Millinery Company as they were made from time to time, and to apply the same exclusively to the liquidation and discharge of the notes which should be made by this defendant under said agreement until the same at any time outstanding should be fully paid off and discharged."

And further alleged that after the discount of the note sued on by the Union National Bank, the L. Wenar Millinery Company made deposits with said Union National Bank more than sufficient to pay off and discharge the note sued on, but that said bank, contrary to said agreement, did not apply said deposits on said note, but applied same on other indebtedness of the L. Wenar Millinery Company due said bank and permitted said millinery company to check said deposits out of said bank without leaving a sufficient amount to pay off and discharge said note.

Defendant Walker made practically the same defense to the suit as made by Goldstein.

This cause was tried twice in the court below. On the first trial judgment was rendered against both defendants for the amount of the note, interest, and attorney's fees, from which judgment appellee Goldstein, alone, appealed, which resulted in the cause being reversed and remanded. See Goldstein v. Union National Bank of Dallas et al. (Tex. Civ. App.) 216 S. W. 409.

The second trial from which this appeal was prosecuted was had before the court without the intervention of a jury, and resulted in a judgment in favor of appellee Goldstein denying appellant the right to recover on its cause of action as alleged against him. This appeal is based upon the following propositions:

(a) "Where a contract is reduced to writing, all matters of negotiation, discussion and agreements on the subject antecedent to and dehors the writing are excluded as being merged in the instrument."

(b) "Where a promissory note absolute upon its face promises to pay a certain sum of money at a stipulated time, it is not competent to show by parol that such note is not absolutely payable or that it is payable in anything other than money."

(c) "Where a director executes as maker a promissory note for the benefit of his corporation to be paid out of the regular daily deposits

of the corporation in the payee bank, and the corporation makes deposits in the payee bank in excess of the amount of the note but checks out in the regular manner said deposits as rapidly as same are made, its account all the while being heavily overdrawn, the maker of the note is not released from liability on the note."

(d) "Where a director executes as maker a promissory note for the benefit of his corporation and therein waives diligence, demand, notice of nonpayment and protest and unconditionally guarantees the payment of the note at maturity or any time thereafter, such maker is not relieved of liability on said note because his corporation agreed to pay said note out of its regular daily deposits to be made in the payee bank and did make regular daily deposits in the payee bank in excess of the amount of said note, but daily checked out said deposits in the regular manner; its account being all the time heavily overdrawn in the payee bank."

The following are the material facts we find to have been established by the statement of facts in this cause before us:

That the note sued on was in words and figures as follows:

"$5,000.00.   Dallas, Texas, Aug. 30th, 1909. No. A12611. Demand after date, without grace, I, we or either of us, promise to pay to the order of the Union National Bank of Dallas, five thousand dollars with interest at the rate of eight per cent. per annum from maturity until paid, for value received. And further promise that if this note is placed in the hands of an attorney for collection, to pay ten per cent. additional on the full amount due as attorney's fees. Each of the makers hereof and the indorsers hereon, waive diligence, demand, notice of nonpayment and protest on this note and guarantee its payment at maturity or any time thereafter. Payable at the office of the Union National Bank of Dallas.   Due, demand.   [Signed] A. Goldstein.   I. B. Walker."

The L. Wenar Millinery Company was a private corporation prior to and at the time of the execution of said note, domiciled in Dallas, Tex., L. Wenar, appellee Goldstein, I. B. Walker, and —— Hexter being the principal stockholders; said Wenar, Walker, and Goldstein were members of the board of directors, and Wenar was president of said corporation, which relationship on the part of said parties to said corporation existed prior to the execution of the note sued upon and continued throughout the transactions had in reference to said note. That in the transaction involving the execution of said note, as well as the negotiations in reference thereto, the Union National Bank was represented solely by the said I. B. Walker; said Walker and Goldstein acted for themselves in the execution of said note as well as in the negotiations leading up to same. The loaning power of the Union National Bank was $20,000. The L. Wenar Millinery Company was extended a line of credit to the extent of $15,000 when it first began doing business with said bank; that limit was later extended, mostly in the form of an overdraft.

The Wenar Millinery Company was loaned the full amount of the $20,000, and sometimes its checks would come in and create an overdraft in excess of that amount; said millinery company did not have sufficient available working capital to handle its business without using the bank's credit, and, even when supplemented by the line of credit so extended, it did not always have sufficient available money to carry on its business. Appellee and said Walker executed their individual notes to said bank in the interest and for the benefit of said millinery company under an agreement by said Walker and appellee with L. Wenar, prior to the execution of said notes, including the one sued on, to the effect that the money deposited daily by said millinery company with the Union National Bank out of its daily business would be applied to the extinguishment of such notes, or set aside until there was a sufficient sum deposited to the credit of the millinery company to pay same, including the note sued upon, and that said I. B. Walker, as manager of said bank, had a similar agreement with L. Wenar.

In reference to this transaction appellee Goldstein testified:

"Of course, I recognized my liability on the note at the time it was made, but the agreement was that Mr. Wenar was to deposit the assets of the Wenar Millinery Company in the bank, which were to be applied to the payment of the note."

The proceeds of said $5,000 note were on November 23, 1909, placed to the credit of the account of the L. Wenar Millinery Company carried with the Union National Bank, at which time its said account was overdrawn to the amount of $7,845.96. This credit reduced the amount of the overdraft to $2,845.96. That throughout the entire period of time from November 23, 1909, until said account was closed by the bankruptcy of said millinery company, there existed an overdraft in its account on the books of the Union National Bank, which, at that time, still amounted to $1,977.75. From November 23, 1909, to April 13, 1910, said Wenar Millinery Company made deposits every few days in its usual and customary manner in the Union National Bank, which aggregated $21,186.63, and that said deposits were checked out by said millinery company in the course of its business and in its usual customary manner about as rapidly as same were made.

Harry Cohn, a witness for the appellee and bookkeeper for the millinery company, in reference to the agreement that the note should be paid out of the deposits, testified:

"It was understood at the time between L. Wenar and Goldstein and Walker that Wenar was to draw no more checks against the account until the overdrafts were liquidated and the accommodation note canceled."

At the time of the execution and delivery of said note, said Walker, Goldstein, and one L. Wenar were directors of the L. Wenar Millinery Company. That said note was executed and delivered at the instance of said directors of said millinery company and the proceeds thereof credited to the account of said company with said Union National Bank, then overdrawn largely in excess of said note.

The Union National Bank was taken over by the appellant, and the note sued on passed to appellant as part of the assets of the Union National Bank.

[1] In the court below it was contended by appellee that he was a surety and not a principal in the execution of said note, his claim of suretyship arising through his contention that he was an accommodation maker of the note for the benefit of his corporation, and that he was released from liability thereon because the original payee, the Union National Bank, released the securities for the payment of same, to wit, the daily deposits made with said bank to the account of L. Wenar Millinery Company. This contention cannot be sustained. Appellee was a stockholder in the L. Wenar Millinery Company, therefore was interested in the welfare of said company, and, to the extent of the stock held by him, owned an interest in its property. This interest was sufficient consideration to make him liable as a principal debtor in the execution of said note, although the proceeds were for the use and benefit of the L. Wenar Millinery Company. Reed v. Pueblo First National Bank, 23 Colo. 380, 48 Pac. 507; Vitkovitch v. Kleinecke, 33 Tex. Civ. App. 20, 75 S. W. 544.

[2] To constitute one an "accommodation maker," he must not be the recipient of any consideration, as the very term implies an act without any consideration valuable in law moving to the party thus lending the use of his credit to another, but, to the contrary, that it is purely an act void of present or anticipated personal profit, gain, or advantage, viz. an act to oblige, the performance of an unselfish and friendly service for another, without receiving or expecting a quid pro quo. This is in accordance with the generally accepted definition of accommodation paper as defined in 8 C. J. p. 252, art. 398. Accommodation paper is a bill or note to which the acceptor, drawer, maker, or indorser, as the case may be, has put his name without consideration for the purpose of accommodating by loan of his credit some other person, who is to provide for payment of the bill or note when it falls due.

[3] Furthermore, the language, "each of the makers hereof and the indorsers hereon waive diligence, demand, notice of nonpayment and protest on this note, and guarantee its payment at maturity or any time there-

after," contained in the note sued on, unmistakably made it plain that appellee did not sign as an accommodation maker but as an absolute guarantor without any condition whatever, which took same out of the category of accommodation paper even if it would have been such, under the facts, but for the guaranty provision contained therein. Noble v. Beeman et al., 65 Or. 93, 131 Pac. 1006, 46 L. R. A. (N. S.) 162; Slaughter v. Morton (Tex. Civ. App.) 185 S. W. 905; El-Paso Bank & Trust Co. v. First State Bank (Tex. Civ. App.) 202 S. W. 522; Tilt-Kenney Shoe Co. v. Haggarty, 43 Tex. Civ. App. 335, 114 S. W. 386; Hulme v. Mercantile Co. (Tex. Civ. App.) 149 S. W. 781.

[4, 5] The opinion of the Supreme Court answering the certified question from this court on the former appeal Goldstein v. Union National Bank, 109 Tex. 555, 213 S. W. 584, we are bound to observe and follow as the law of this case, in so far as same is, an answer to the question certified. Articles 1619 and 1625, V. S. C. S. 1914. And that whether or not we would, as an original proposition, accept and apply same as a proper rule of construction applicable to the rights of the parties as revealed by the proceedings before us. Therefore, in the light of said ruling and the former decision of this court based thereon, 216 S. W., supra, we deem it necessary to discuss only the two following counter propositions urged by appellee in support of the judgment of the court below, to wit: "The facts set forth in the third assignment show that payment of the note sued on is the law of the case. This appears in the fifth paragraph of the opinion of this court on the former appeal. The estoppel pleaded was immaterial because the appellee never claimed the note was invalid, he claimed only that it was paid."

The answer of the Supreme Court to the question certified is to the effect that the allegations of appellee's answer disclosed a transaction in which the knowledge of I. B. Walker, as the vice president and general manager of the Union National Bank of Dallas, of the nature of appellee's undertaking in signing the note sued on, and of the agreement to apply the deposits made by the L. Wenar Millinery Company to the payment of said note, as alleged in appellee's answer, was imputable to said bank.

The pleadings of both parties were identical on both trials. The evidence introduced by appellee established the existence of the facts as alleged by him in this respect. Therefore, applying the rule of law as announced by the Supreme Court, supra, the judgment of the court below must be affirmed, as the application of same determines adversely to appellant its several contentions on which this appeal was predicated and sustains appellee's counter propositions.

[6] Appellant contends that, notwithstand-

ing the application of the rule of law as announced by the Supreme Court, nevertheless the judgment of the court below should be reversed and here rendered on the ground that appellee was estopped, under the above facts, from asserting the benefits of said agreement as to the application of the deposits made by the L. Wenar Millinery Company to its account with the Union National Bank as a payment on the note sued on from time to time as such deposits were made, until said note should have been discharged in full.

An estoppel based on the above facts was not pleaded by appellant, the only estoppel pleaded by it being that appellee proved the note as claimed in the L. Wenar Millinery bankruptcy proceedings and that Walker, Goldstein, and Wenar fraudulently obtained the money through a conspiracy and converted the same to their own use and benefit without the knowledge or consent of the Union National Bank, whereby they were estopped from denying the validity of the note sued on.

[7] Further, the third assignment relied on by appellant as the basis for presenting this particular theory of estoppel, based on the knowledge imputed to appellee as a director in the L. Wenar Millinery Company that said company was checking out daily deposits which should have been applied on the note sued on, does not raise such question of estoppel. Therefore, as the question was not raised in the court below, same cannot be considered on this appeal. However, assuming that said question was before this court so as to require due and proper consideration, same would be of no avail, as the facts established did not amount to an estoppel by reason of the fact that, as the deposits were made as shown by the evidence from time to time by L. Wenar Millinery Company to its account carried with the Union National Bank, there arose, automatically, a credit on the note sued upon, and the other application of such deposits made thereafter by the bank receiving same, as shown by the evidence, did not destroy the legal effect of such deposits as a credit on said note the very instant when the respective sums of money so deposited were received by said bank. Therefore, even if it should be assumed that appellee was the sole maker and the only one interested in the payment of said note under the same facts and circumstances as the note was executed by appellee and I. B. Walker, the deposits so made, notwithstanding the subsequent application of same contrary to the agreement under which said note was executed, and with the knowledge of appellee as the sole maker, would not serve to defeat, in a suit brought to enforce the collection of said note, his plea of payment based upon the agreement under which said note was executed by him and the subsequent deposits made thereunder, as such proceedings would be lacking in the essential elements of estoppel, in that it would be wanting in the commission of any act or the exercise of any influence on the part of appellee, by his silence or otherwise, which caused said bank to apply said deposits other than to the liquidation of said note; and it could not be said that the act of applying same otherwise, viz. to the payment of other indebtedness due said bank, as well as to the voluntary payment by said bank of checks drawn on said account, in violation of said agreement, of which appellee had knowledge and made no protest, caused or induced said bank to so act, which it otherwise would not have done but for such knowledge of and silence on the part of appellee.

Such application of the doctrine of estoppel to the case before us is perforce of the rule of law announced in answer to the certified question, supra.

The judgment of the court below is affirmed.