C. L. Voss, Cashier, v. E. N. Chamberlain and Amos Weatherbee, Appellants.

Bills and notes: BLANK INDORSEMENT: NEGOTIATION. A guaranty
1 of payment of a note by the payees, combined with a waiver of demand, notice and protest, constitutes a contract of indorsement and not guaranty; and where no indorsee is named the indorsement is in blank, and subsequent delivery of the instrument to one who takes it in due course and for value passes title.

Same: *Bona fide* HOLDER. The transferee of negotiable paper who
2 takes the same as collateral by way of substitution for other collateral surrendered becomes a holder for value.

Same: AMOUNT OF RECOVERY. The rule of the statute that a *bona*
3 *fide* holder of negotiable paper can recover against the maker no greater sum than he paid for the instrument, where the same was procured by a fraud on the maker, has no reference to recovery on an instrument to which the maker has no defense; as where one having only the custody of notes indorsed by the payees wrongfully pledged them in lieu of other collateral, but thereafter obtained possession of the same on the agreement to collect or cash them and return the proceeds to the pledgee, but instead returned the notes to the payees, the pledgee was not limited in his recovery to the value of the collateral surrendered.

Unauthorized transfer of negotiable paper: TITLE. The rule that
4 one who simply has possession of the personalty of another, including *quasi* negotiable paper representing the same, cannot by delivery without authority transfer title even to a *bona fide* purchaser for value, has no application to a note indorsed in blank and coming into the hands of a *bona fide* purchaser in due course.

*Bona fide* purchaser: PRESUMPTION: BURDEN OF PROOF. The trans-
5 feree of negotiable paper regular on its face is presumed to be a holder in due course, and this presumption is not overcome by a mere showing that the title of the party trans-

ferring the same was defective; but those questioning his title are charged with the burden of proving his lack of good faith in acquiring it.

**Same.** When one of two innocent parties to negotiable paper must suffer by the wrongful act of a third person, the one who made the wrongful act possible must bear the loss.

*Appeal from Crawford District Court.*— Hon. Z. A. Church, Judge.

Thursday, July 9, 1908.

Rehearing Denied Wednesday, October 21, 1908.

Action for damages for the conversion of certain promissory notes. On a trial to the court without a jury judgment was rendered for plaintiff, and defendants appeal. —*Affirmed.*

*Mayne & Hazelton,* for appellants.

*Shaw, Sims & Kuehnle,* for appellee.

McClain, J.— In April, 1903, one H. S. Green, a banker at Dow City, Iowa, acting as agent for the defendants, effected a sale for them of a tract of land in Nebraska, receiving in payment a small sum in cash and certain promissory notes which were made payable to " E. N. Chamberlain, Amos Weatherbee, and H. S. Green, or order." Green appropriated the cash payment and the proceeds of the first of the notes to become due in point of time which he collected to the payment of his commission, and turned over the other notes, of the face value of $4,350, to the defendant Chamberlain as the property of defendants, signing his name on the back of the notes to a stamped guaranty of payment, waiving demand, notice of nonpayment, and protest. In November, 1903, defendant Chamberlain, intending to ne-

gotiate the notes, indorsed his own name, and had the name
of his co-owner, Weatherbee, indorsed under the name of
Green on the back, but as the sale of the notes was not then ef-
fected, they were replaced among the private papers of Cham-
berlain, which were kept for safety in the Exchange Bank of
Dow City, of which Green was owner.   At some time be-
tween November, 1903, and March 19, 1904, these notes were
pledged by H. S. Green to the Bank of Denison, of which
C. L. Voss the plaintiff, is cashier and L. M. Shaw and C. L.
Kuehnle owners, by way of substitution for other collateral
held by the Denison bank as security for antecedent indebt-
edness of H. S. Green to the extent of $6,175.   On March
19, 1904, these notes were delivered by the Bank of Denison
to H. S. Green, who in the receipt given therefor describes
them as collateral, and promises that, if paid or sold, the
proceeds will be applied by him in payment of his notes, and,
if not paid or sold, they will be returned to the Bank of
Denison by about April 10, 1904.   On April 8, 1904, in pur-
suance of bankruptcy proceedings against H. S. Green, a re-
ceiver was appointed for the Exchange Bank of Dow City,
and after that time the notes in question were found among
the private papers of defendant Chamberlain, where they had
been before they were pledged by Green to the Denison bank.
It is clear from the evidence that without authority of de-
fendants, who were the owners of these notes, Green, who
had no interest therein or right to the custody thereof, ab-
stracted them from the wallet in which Chamberlain kept
them with other private papers in the Exchange Bank, and
pledged them to the Denison bank as collateral security for
his own indebtedness, and that subsequently, having obtained
them from the Denison bank for the purpose of selling or col-
lecting them, or collecting interest as the agent of the Denison
bank, he returned them to the wallet containing Chamber-
lain's private papers; neither Chamberlain nor Weatherbee
having had any knowledge in the meantime that they had
been abstracted and pledged to the Denison bank.   It also ap-

pears that plaintiff Voss, as cashier of the Denison bank, accepted these notes from Green as collateral by way of substitution for other collateral surrendered without knowledge of any right thereto on the part of Chamberlain and Weatherbee, and in the belief that they were the property of Green.

If the Bank of Denison became the holder of the notes in question as collateral security in due course, and for valuable consideration, it is entitled to recover the value of the notes as subsequently found in the possession of Chamberlain claiming to hold them as the property of Chamberlain and Weatherbee, and refusing to deliver them up on demand; for the delivery of the notes to Green for a specific purpose as the agent or custodian of the bank did not constitute a surrender of the lawful possession of such notes by the bank as the holder for value. *Palmtag v. Doutrick,* 59 Cal. 154 (43 Am. Rep. 245); *Burley v. Rose,* 57 Iowa, 651; *Clark v. Iselin,* 21 Wall. (U. S.) 360 (22 L. Ed. 568); Jones, Pledges (2d Ed.) sections 40–48. If Green having possession of the notes indorsed in blank, had transferred them to an innocent holder for value, such transferee would no doubt have acquired rights prior to those of the Bank of Denison; but his surreptitious return of the notes to the wallet containing the papers of defendant Chamberlain did not invest the defendants with any other rights than those which they had prior to the abstraction of the notes from the wallet by Green and their delivery to the Bank of Denison. The return of the notes to Chamberlain's possession without his knowledge, and without his having parted with any new consideration or voluntarily incurring any detriment, did not make the defendants new holders for value in due course.

The sole question to be determined, then, is whether by the original pledge of the notes by Green the Bank of Denison became holder thereof in due course for value and without notice of the wrongful act of Green in thus transferring paper to which in fact he had no title. The notes were not yet

1. BILLS AND NOTES: blank indorsement: negotiation.

due at the time of their transfer by Green to the Bank of
Denison, and the bank, therefore, took any rights which it ac-
quired before maturity.    But it is contended for appellants
that it acquired no rights whatever because the notes were
payable to the persons named therein or order, and were not
so indorsed, as that title would pass by delivery.    As appears
from the facts stated, the indorsement by Green when the
notes were first procured by him and delivered to the defend-
ants was by means of his signature to a guaranty of pay-
ment entered on the back of the notes with a waiver of de-
mand, notice and protest.    The names of defendants were at
a subsequent time written by them under the name of Green
following this guaranty.    If it were material to determine
whether defendants indorsed the notes in blank, or merely
joined with Green by the subsequent act in guaranteeing pay-
ment, it might be difficult to say whether they became blank
indorsers or only guarantors.    But, according to the weight
of authority and the recent holding of this court, the signing
of a guaranty of payment combined with waiver of demand,
notice and protest constitutes the signers of such an indorse-
ment who are payees of the note indorsers and not guarantors,
and, as no indorsee is named, such indorsement is a blank in-
dorsement and the subsequent delivery of the instrument to
one who takes in due course and for value passes title.    *Ger-
man American Savings Bank v. Hanna,* 124 Iowa, 374.

In determining whether the Bank of Denison became a
holder for value, it is not necessary to consider the conflict in
authorities as to whether a transfer as security for a pre-ex-
isting debt constitutes the transferee a holder
2. Same: *bona
  fide* holder.    for value, for the evidence shows that the notes
were delivered to the Bank of Denison by way
of substitution for other collateral which was surrendered in
the same transaction; and, beyond question, a transferee who
thus takes collateral by way of substitution for other collateral
surrendered becomes a holder for valuable consideration.
*Park Bank v. Watson,* 42 N. Y. 490 (1 Am. Rep. 573);

*Greenwell v. Haydon,* 78 Ky. 332 (39 Am. Rep. 234);
*Cherry v. Frost,* 7 Lea (Tenn.) 1; *Sawyer v. Turpin,* 91 U.
S. 114 (23 L. Ed. 235); 1 Daniel's Negotiable Instruments,
section 827. Since the adoption in this State of the " Negoti-
able Instruments Act (Act 29th Gen. Assem. [Laws 1902,
page 86] chapter 130), there is no question, however, as to a
holder who takes by way of security for pre-existing indebt-
edness being a holder for value. By section 52 of that act
(Code Supp. 1907, section 3060a52) a holder in due course
must be a holder " for value," and the term " value " means
valuable consideration (section 191), and by section 25 it is
declared that " an antecedent or pre-existing debt constitutes
value." In no view of the case, therefore, can the Bank of
Denison be said not to have been a holder for value.

In this connection it is contended, however, that, as the
value of the collateral surrendered when the notes in question
were accepted by the Bank of Denison is not shown, the bank
is not entitled to recover because, under Code,
3. SAME: amount section 3070, a *bona fide* holder for value may
of recovery.
not recover as against the maker of negotiable
paper a greater sum that the holder paid for the instrument
if it has been procured by fraud upon such maker. This
section evidently has reference, however, to recovery on in-
struments as to which the maker has a defense. The de-
fendants in this action were not the makers of the notes which
they are charged with having converted, nor are they sued as
makers. There is no contention that any fraud was perpe-
trated upon the maker, and there is no occasion, therefore,
to limit the recovery of plaintiff to the amount or value of the
security surrendered when these notes were accepted by way
of substitution. The indebtedness of Green to the Bank of
Denison exceeds the amount of this collateral, and plaintiff
is entitled to recover, therefore, if at all, in the full value
of the notes converted. If the bank was holder in due course
and free from defenses, it might enforce payment against
the maker of the notes and the defendants as indorsers for the

full amount thereof.   See Negotiable Instruments Act, Code
Supp. 1907, section 3060a57.   And the amount which the
bank might have recovered on the notes had they not been
converted by the defendants would be the measure of recovery
against defendants for their unlawful conversion.

The main contention for the appellant is that Green had
no title to these notes when he transferred them to the Bank
of Denison, and that the bank could not, therefore, acquire
title or right thereto as against defendants,
the lawful owners.   The rule invoked is that
applicable to personal property in general, that
one who has such property in his custody, but with-
out any title, as for instance a thief or the finder of lost
goods, cannot by delivery even to a purchaser in good faith
and for value transfer title which will be valid as against the
real owner, who has not by any act of his conferred apparent
authority to transfer title upon the one who has such apparent
custody.   This rule is applicable not only to goods and chat-
tels, but to instruments *quasi* negotiable in character, repre-
senting property and intended to pass for it by delivery such
as bills of lading.   *Shaw v. Railroad Co.,* 101 U. S. 557 (25
L. Ed. 892) ; *McMahon v. Sloan,* 12 Pa. 229 (51 Am. Dec.
601).   But to this rule there is a distinct and universally
recognized exception in case of current money and negotiable
instruments payable to bearer or indorsed in blank which
are considered as standing for and representing money, com-
ing into the hands of a holder in due course; that is, before
maturity for value and without notice of defect in the title.
In such cases the title of the holder is not dependent upon
that of the person from whom the money or instrument is
obtained.   This is, as said by Lord Chief Justice Holt in 1
Salk. 126 (Anonymous), " by reason of the course of trade
which creates a property in the assignee or bearer," and this
reason is repeated by Lord Mansfield in *Miller v. Race,* 1
Burr. 452, with the suggestion that " the ' bearer ' is a more
proper expression than assignee," and with the more explicit

4. Unauthorized transfer of negotiable paper: title.

statement with reference to bank notes payable to bearer that "they are not goods, not securities nor documents for debts, nor are they so esteemed, but are treated as money, as cash in the ordinary course and transaction of business by the general consent of mankind which gives them the credit and currency of money to all intents and purposes." Lord Mansfield in the later case of *Peacock v. Rhodes,* 2 Douglas, 633, stated the law to be "well settled that a holder coming fairly by a bill or note has nothing to do with the transaction between the original parties"; and he continues: "I see no difference between a note indorsed blank and one payable to bearer. They both go by delivery and the possession proves property in both cases." And he adds with reference to the particular case under consideration that, as the jury had found that the bill indorsed in blank on which action was brought by a holder taking by delivery was received in course of trade, the case was clear that the holder could recover, although it had been stolen from a previous holder. In *Miller v. Race, supra,* Lord Mansfield further explains the rule with reference to bank bills payable to bearer, in answer to the suggestion that it was based on the lack of earmarks, which would limit it to money. "'Tis pity that reporters sometimes catch at quaint expressions that may happen to be dropped at the bar or bench; and mistake their meaning. It has been quaintly said that the reason why money cannot be followed is because it has no earmarks; but this is not true. The true reason is upon account of the currency of it. It cannot be recovered after it has passed in currency. So in case of money stolen the true owner cannot recover it after it has been paid away fairly and honestly upon a valuable and *bona fide* consideration; but before money has passed in currency an action may be brought for the money itself." This reasoning of Lord Mansfield has received unqualified approval both as to money and as to negotiable instruments payable to bearer or indorsed in blank. In *Saltus v. Everett,* 20 Wend. (N. Y.) 267, 277 (32 Am.

Dec. 541), it is said: " A long series of decisions, beginning with *Miller v. Race,* 1 Burr. 452, has so settled the law that possession of such paper is presumptive proof of property, and that he who received it in the course of trade for a fair consideration, without any reason for just suspicion, can hold it against the true owner, and recover on it against the drawer, maker, and other parties, even if the paper had been stolen from or lost by the former holder; such former holder retaining all his original rights only against the thief or the finder, or whoever received the paper from them under suspicious circumstances." See, also, *Murray v. Lardner,* 2 Wall. (U. S.) 110, 118 (17 L. Ed. 857); *Tucker v. New Hampshire Savings Bank,* 58 N. H. 83 (42 Am. Rep. 580); 2 Randolph's Commercial Paper (2d Ed.) section 736; 1 Daniel's Negotiable Instruments, sections 663, 729. If the bank took these notes in due course of business, its title was not affected by the fact that Green unlawfully abstracted them from the possession of defendants. *Wheeler v. Guild,* 20 Pick. (Mass.) 545 (32 Am. Dec. 231); *Greenwell v. Haydon,* 78 Ky. 332 (39 Am. Rep. 234); Negotiable Instruments Act, Code Supp. 1907, sections 3060a56, 57.

It is argued, however, that plaintiffs did not show the Bank of Denison to be a holder in due course, because there was no competent evidence with reference to one of the owners of the bank that he had no notice of the want of right or authority on the part of Green to transfer the notes by delivery, and counsel rely upon cases of which *McKnight v. Parsons,* 136 Iowa, 390, and *Keegan v. Rock,* 128 Iowa, 39, are examples, holding that, as against a defense by the maker that the instrument was procured and negotiated through fraud or in breach of trust, the holder must affirmatively establish want of notice. But the cases thus relied upon are those in which it is held that, by reason of defective execution of the instrument itself or lack of assent on the part of the person sought to be charged as maker, it has not become a negotiable

5. *Bona fide* PURCHASER: presumption: burden of proof.

instrument to which the rules relating to indorsement and transfer are applicable. No such question arises in this case. The notes were fully executed and delivered as negotiable instruments to the defendants, and as such were held by them when they were abstracted from the possession of defendant Chamberlain and delivered by Green to the bank. The authorities already cited expressly negative any obligation on the part of the holder to prove diligence in ascertaining the right of the person in actual possession purporting to transfer title and charge the holder with the defective title of the person making the transfer only where bad faith is shown. In the United States there has been a continuing conflict of authority on this question. See 2 Randolph's Commercial Paper, sections 996–1001; 2 Daniel's Negotiable Instruments, section 1680. This uncertainty in the law has been remedied by the adoption in this State of the Negotiable Instruments Act by which it is provided in section 59 (Code Supp. 1907, section 3060a59), as follows: " Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Defendants cannot, therefore, overcome the presumption that the Bank of Denison became the holder of the notes in due course — that is, without notice — by showing that the title of Green to such notes was defective. In other words, to defeat the title of the bank, defendants have the burden of proving want of good faith on the part of the bank in accepting the notes from Green.

A rule often applied in deciding a controversy like this, between a holder of negotiable paper and a party who has given it apparent validity in the hands of one transferring

it without right, is that, when one of two innocent persons must suffer by reason of the wrongful act of a third party, that one must bear the loss who made it possible for the third party to commit the wrong. It is not always easy to say whether in a particular case the one upon whom it is sought to cast the responsibility under this rule has done an act such as to charge him for the wrongdoing of another who has proceeded without legal authority; but the case before us is one coming well within the rule as often applied. The defendants held these notes payable to the order of Green and themselves and indorsed by Green. In this condition the notes could not have been put in circulation so as to come into the hands of a holder in due course without notice. Defendants intentionally indorsed the notes with the purpose that they should be negotiated, and, although this purpose was not at the time carried out, they left the notes in this condition, apparently indorsed for negotiation and transfer by delivery, in the custody of the Exchange Bank of which Green was the owner and manager. By this act of placing the notes within the control of Green, they enabled him to make a transfer of them by delivery as owner, and to put the Bank of Denison in such condition as to suffer a loss without any fault on its part if the apparent title acquired by it from Green should be held defective. It has often been held that, under such circumstances, the rights of the holder are superior to those of the previous party who has made the transfer of the instrument practicable. *Emerson v. Crocker,* 5 N. H. 159; *Tucker v. New Hampshire Savings Bank,* 58 N. H. 83 (42 Am. Rep. 580); *Cherry v. Frost,* 7 Lea (Tenn.) 1. A motion of appellants submitted with the case to strike appellee's additional abstract from the files is overruled. The judgment is *affirmed.*

6. SAME.