No. 23,956.

MRS. J. H. BROWN, *Appellee,* v. THE SOUTHWESTERN FARM MORTGAGE COMPANY et al. (THE HOME SAVINGS AND LOAN ASSOCIATION, *Appellant).*

SYLLABUS BY THE COURT.

NEGOTIABLE INSTRUMENTS—*Three Debenture Bonds—Title and Ownership—Plaintiff an Innocent Holder in Due Course.* Three corporations which had close business relations and had headquarters in the same building, had the same person for president of each. One of them issued negotiable bonds and sold some of them to another. of the three corporations, and these were placed in the safe of the third corporation. The president unlawfully abstracted the bonds from the safe and sold them for an adequate consideration to one who had no knowledge of his fraud. Later, plaintiff, who pur-

Brown v. Farm Mortgage Co.

chased the bonds, turned them over to the corporation which issued them, for safe-keeping, and the president issued a receipt therefor. Still later, the president took the bonds so deposited and replaced them in the safe from which they had been abstracted, and the corporation which first purchased them thereby came into their possession. No one other than the president of that corporation knew the bonds had been taken from the safe and sold to plaintiff, nor of the surreptitious return of the same. *Held,* that in the transfer of the bonds to plaintiff, she acquired a good title·to them, and *further held,* that in the return of the bonds to the possession of the corporation which formerly owned them it did not become a holder in due course.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed November 4, 1922. Affirmed.

*H. E. Ganse,* and *Gilbert H. Frith,* both of Emporia, for the appellant.
*Lon C. McCarty,* and *W. S. Kretsinger,* both of Emporia, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action involves the right to the possession and ownership of three negotiable debenture bonds, each of the denomination of $1,000. The trial court adjudged that plaintiff owned and was entitled to the possession of them, and of this decision the defendant complains.

It appears that the Southwestern Mortgage Company, the Farmers State Bank, and the Home Savings & Loan Association, were all engaged in business in Emporia, and all maintained headquarters and conducted their business in the same building. Aside from the proximity of their headquarters, there was a close relationship in the interchange and management of the business conducted by them. E. J. Conklin was the president and manager of all three members of this family of corporations. The bonds in controversy, with certain others, were issued by the mortgage company, and on March 13, 1919, a sale was made of them by Conklin to the loan association, which deposited them in a compartment in the safe of the Farmers State Bank. About two and one-half months after the sale of the bonds to the loan association, Conklin unlawfully took the bonds from the safe of the bank and sold and delivered them to the plaintiff, who paid full consideration for them and took them without notice of the fraud of Conklin. About five months after the purchase by the plaintiff she became concerned about the safety of the bonds, which were being kept in her home, and took them to the

13—112 KAN.

mortgage company where they were deposited for safe-keeping. Conklin, who was in charge of the business, accepted the bonds for that purpose and issued the following receipt:

"EMPORIA, KANSAS, July 8, 1919.

"Received of Mrs. J. H. Brown, three $1000.00 mortagage bonds for safe-keeping.　　　(Signed)　THE SOUTHWESTERN MORTGAGE COMPANY,

By E. J. CONKLIN, *President."*

Soon afterwards these bonds so deposited were found back in the compartment of the safe in the Farmers State Bank from which they had been wrongfully taken by Conklin, and apparently had been returned and replaced in the compartment by him. In the early part of January, 1920, it was discovered that Conklin had become a defaulter, had wrecked the institutions with which he had been connected, and had become a fugitive from justice. In a search for the bonds which plaintiff had placed with the mortgage company for safe-keeping she learned that after Conklin had absconded the bank examiner found them among the assets of the loan association in the compartment where they had been placed by the loan association before they had been unlawfully extracted by Conklin and sold to the plaintiff. The loan association refused to deliver the bonds to plaintiff upon her demand, and following this the present action was brought.

To whom do the bonds belong, is the question to be determined. It is conceded that the bonds were negotiable instruments, that plaintiff paid an adequate consideration for them, that she purchased them without knowledge of the wrongful abstraction of them by Conklin or of any circumstances that would put her on inquiry as to the validity of the transfer. It appears to be conceded, too, that plaintiff, having obtained them for a fair consideration and without notice of defects, she then acquired a good title to the bonds notwithstanding they had been stolen from defendant. It is contended, however, that in the replacement of the bonds in the safe from which they were extracted, the defendant not only gained possession of them by the surreptitious transfer but that the plaintiff was thereby divested of her acknowledged title and the ownership was shifted back to the defendant. The bonds having passed out of the ownership of defendant and the plaintiff having acquired a good title to them, did the regaining of possession by defendant in the manner stated revest the title in it? To accomplish this and make

the defendant a holder in due course, it was essential that there should be a new consideration and that the defendant acquired the bonds without knowledge of infirmity or defects in the title or knowledge of such facts as would make the retaking of the bonds an act of bad faith. (Neg. Inst. Act, §§ 59, 61-64, Gen. Stat. 1915, §§ 6579, 6581-6584.) As to knowledge or notice of defects in the title, it is true that the secretary of the defendant, who first placed the bonds in the bank safe, and who appears to have been more directly in charge of such securities than other officers of the association, had no knowledge of the wrongful taking and sale of the bonds, nor yet of their replacement, but the president of the association, who had managing authority did know all the facts as to the ownership of plaintiff, and as such officer of the association did know that he had no authority to transfer the bonds of plaintiff that had been left with the mortgage company for no other purpose than safe-keeping. Conklin was the presiding officer and authorized agent of the three corporations, including the defendant, and it must therefore be held chargeable with knowledge of the wrongful transfer of plaintiff's bonds that its president had. It cannot avail itself of the results of his fraud and escape responsibility for it. Again, it appears that no new consideration was paid by the defendant. There were no negotiations between the defendant and anyone relating to the bonds, nor any attempt by it to purchase or pay for them. Indeed no officer of the defendant except the president even knew that the bonds had been taken from the bank or of their replacement in it. The plaintiff, who then owned the bonds, gave no consent to the transfer of them and no value was paid to plaintiff by defendant when they were put back in the bank's safe. The defendant cites and greatly relies on *London & County Banking Co. v. London and River Plate Bank,* 21 Q. B. Div. 535, as an authority that the restoration of the bonds by Conklin released him from liability for an action of conversion which amounted to a fair consideration. In that case the manager of a bank which held negotiable securities, stole and sold them to another for value, who was without notice of any fraud. Later the thief by fraud managed to gain possession of the securities from the transferee and put them back into the possession of the party from whom they had been stolen. It was held that the transfer of the stolen securities to another without notice of the fraud and for a good consideration gave the purchaser a good title to them. It was also held that a consideration was necessary

to the passing of the securities upon the restoration of them to the former owner, but it was further held that in stealing and selling the securities, the manager not only committed a criminal offense but was rendered liable for their conversion, and when he restored them without the knowledge of the former owner he was presumed to have accepted the securities, that by the acceptance the bank lost the right to begin an action of conversion, and this afforded a consideration which made the bank a holder in due course. The court remarked that the rule applied is artificial, and we incline to the opinion that it is not sound. We think the extinction of the right to sue the thief who stole the securities and afterwards fraudulently obtained and restored them did not amount to a valid consideration. He had the possession of the securities but held no interest in them and had nothing to transfer. If the officers of the bank had learned of the theft and had been present when the securities were restored, they would also have learned that they belonged to another. They could not have compounded the crime of larceny, and the loss of the right to sue the thief seems to us to be an unsubstantial and fictitious basis for a valid consideration. However, if the ruling were treated as sound it would not be controlling here in view of the difference in the facts. Here we have the added fact that the one who embezzled and sold the bonds was an officer and managing agent of the defendant to whose possession the bonds were restored, and therefore the defendant must be deemed to be a purchaser with notice that the bonds were owned by plaintiff and of the fact that its agent, Conklin, had no right to revest title in the defendant.

There appears to be little direct authority on the question presented. *Voss v. Chamberlain*, 139 Iowa, 569, had some features like those involved in the case under consideration. Some notes belonging to Chamberlain and Weatherbee were placed in a wallet in the bank of which Green was the owner. Green had no interest in the notes or right to the custody of them. He abstracted them from the wallet in which Chamberlain kept his private papers and pledged them to the Denison bank as security for his own indebtedness. Subsequently he obtained possession of the notes for the claimed purpose of selling or collecting interest on them as the agent of the Denison bank. Instead of doing that he returned and placed them in the Chamberlain wallet from which they had been taken. Neither Chamberlain nor Weatherbee had any knowledge that the notes had been abstracted and transferred to the Denison bank. The cashier

of that bank, who accepted the notes from Green as collateral, did not know that the notes belonged to others, but took them in the belief that they were his property. It was held that the Bank of Denison became a holder for value of the notes, and in referring to the secret replacement of them by Green in the wallet of the former owner it was remarked:

"If Green having possession of the notes indorsed in blank, had transferred them to an innocent holder for value, such transferee would no doubt have acquired rights prior to those of the Bank of Denison; but his surreptitious return of the notes to the wallet containing the papers of defendant Chamberlain did not invest the defendants with any other rights than those which they had prior to the abstraction of the notes from the wallet by Green and their delivery to the Bank of Denison. The return of the notes to Chamberlain's possession without his knowledge, and without his having parted with any new consideration or voluntarily incurring any detriment, did not make the defendants new holders for value in due course." (p. 572.)

The defendant paid no new consideration for the bonds of plaintiff delivered to it, and must be held to have acquired them with notice of the fraudulent transfer and of the ownership of plaintiff, and hence is not holder for value in due course.

Judgment affirmed.