M. J. WALLRICH LAND & LUMBER COMPANY, Appellant, vs. EBENREITER, Respondent.

*September 12—October 9, 1934.*

For the appellant there was a brief by *Matthew M. Wall-rich,* and oral argument by *E. L. Aschenbrener,* both of Shawano.

*Charles Voigt* of Sheboygan, for the respondent.

NELSON, J. The facts are not in dispute. On April 14, 1930, Sheboygan Coaster & Wagon Works, a corporation, hereafter called the Wagon Works, being then indebted to the plaintiff on open account, made, executed, and delivered

to the plaintiff three promissory notes signed by it as maker. The first note, dated April 14, 1930, is for $350 and became due four months after its date. The second note, dated April 14, 1930, is for $350 and became due six months after its date. The third note, dated May 14, 1930, is for $1,000 and became due six months after its date. Prior to the delivery of the notes, the defendants, all of whom were stockholders and officers of the Wagon Works, signed their names on the back of each of said notes under the following indorsements or language:

"Protest waived. Payment guaranteed."

On or about August 12, 1930, the Wagon Works sought to enter into agreements with its general creditors aggregating eighty-seven in number, to whom it was indebted in the total sum of $24,830.62, extending the time of payment of their respective claims and demands against it for a period of eighteen months from the date of such agreements. Such an agreement was entered into between the Wagon Works and the plaintiff company. Thereafter, on April 9, 1931, the Wagon Works was duly adjudicated a bankrupt. It appeared upon the trial that the defendant William H. Beutel and A. F. Beutel had theretofore been adjudged bankrupts. Whereupon the court dismissed the action as to them.

The trial court concluded that the defendants were guarantors, not indorsers, of the notes, and that each of said guaranties was void under the statute of frauds, sec. 241.02, Stats., for the reason that no consideration was expressed therein, as held in *Taylor v. Pratt,* 3 Wis. *674; *Houghton v. Ely,* 26 Wis. 181; *Parry v. Spikes,* 49 Wis. 384, 5 N. W. 794; *Commercial Nat. Bank of Appleton v. Smith,* 107 Wis. 574, 83 N. W. 766; *Alltone Co. v. Cebell,* 194 Wis. 591, 217 N. W. 302.

The plaintiff contends that the court erred in holding: (1) That the defendants were guarantors and not indorsers, and (2) that the consideration must be expressed in a guaranty written on the back of a note.

The trial court further found and concluded that the agreement entered into between the plaintiff and the Wagon Works, extending the time of payment of its notes, was void and of no force or effect because similar agreements were not signed by all of the creditors of the latter. The defendants move for a review of that finding and conclusion contending that since the defendants were secondarily liable on a negotiable instrument they were discharged by virtue of the provisions of sec. 117.38 (6), Stats., which provides that a person secondarily liable on a negotiable instrument is discharged:

"By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument unless made with the assent, prior or subsequent, of the party secondarily liable, unless the right to recourse against such party is expressly reserved, or unless he is fully indemnified."

The first question to be determined is whether the defendants by subscribing the language "Protest waived. Payment guaranteed," became indorsers or guarantors of said notes.

Sec. 116.68 of our statutes, which is sec. 63 of the Uniform Negotiable Instruments Act, provides as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

The obvious purpose and hope in enacting a uniform law is to establish not only uniformity of statute law but uniformity of decisions construing it. *Columbian Banking Co. v. Bowen,* 134 Wis. 218, 114 N. W. 451; *Bank of Conway v. Stary,* 51 N. D. 399, 200 N. W. 505, 37 A. L. R. 1202.

An examination of the decisions handed down since the adoption by the several states of the Uniform Negotiable Instruments Act reveals that the courts are not in accord as to the meaning of sec. 63. In *Bank of Italy Nat. T. & S. Asso. v. Symmes,* 118 Cal. App. 716, 5 Pac. (2d) 956, 957, it was

held that one who signed his name under the following language on the back of a note, "For value received, I hereby guarantee payment of the within obligation and all renewals or extensions thereof, and I hereby waive presentation, demand, protest, notice of protest and notice of nonpayment," was a guarantor not an indorser. The following decisions are in accord with the construction given to the statutes by the California court: *Northern State Bank of Grand Forks v. Bellamy,* 19 N. D. 509, 125 N. W. 888, 31 L. R. A. (N. S.) 149; *Noble v. Beeman-Spaulding-Woodward Co.* 65 Oreg. 93, 131 Pac. 1006, 46 L. R. A. (N. S.) 162. However, in *Mangold & Glandt Bank v. Utterback,* 54 Okla. 655, 160 Pac. 713, L. R. A. 1917B 364, 368, it was held that one who signed his name on the back of a note under a statement "Payment guaranteed. Protest waived," was not a guarantor but was an indorser. It was there said:

"It will be observed from section 4113 that the tendency of the law, when the status of a party who places his name upon the back of a negotiable instrument is under consideration, is to resolve all doubtful cases towards holding the same to be a commercial indorsement in due course. This rule is founded upon commercial necessity. The unshackled circulation of negotiable notes is a matter of great importance. The different forms of commercial instruments take the place of money. To require each assignee, before accepting them, to inquire into and investigate every circumstance bearing upon the original execution, and to take cognizance of all the equities between the original parties, would utterly destroy their commercial value and seriously impede business transactions.

"A simple indorsement by the payee of his name upon a note serves the double purpose both of transferring the title to the holder and of charging the payee with the obligation to pay it in event the maker upon presentation declines to honor it. But before the liability can be fixed against the indorser there must be: First, a demand made upon the maker of the note for payment; and, second, in case the same is not paid, notice must be given the indorser. The rule

seems to be that a general guaranty is in law a general indorsement of the instrument, with a waiver of the condition precedent of a notice of nonpayment by the drawers. 3 R. C. L. § 371.

"There is no contention but that in the case at bar the defendant is at least a guarantor. If he be a guarantor only, then he is not entitled to the legal rights of an indorser to be served with notice of nonpayment. Yet we find written upon the back of the instrument in controversy the very significant words 'Protest waived.' Why waive a right that a party did not have? It must be presumed that the parties did not intend to do a useless and unnecessary act when these words were written upon the back of the instrument, and the reasonable construction is that by the entire indorsement he became an indorser with the enlarged liability of being legally held to payment without notice of the dishonor of the note. Further, no one can fairly say that the intention of the defendant not to be bound is clearly indicated from the words written upon the back of the instrument in controversy; in fact, the indication points the other way."

To the same effect are *Voss v. Chamberlain,* 139 Iowa, 569, 117 N. W. 269, 19 L. R. A. (N. S.) 106; *Hoosier Mut. Ins. Co. v. Citizens' Trust & Savings Bank of Princeton,* 89 Ind. App. 5, 165 N. E. 446; *First Nat. Bank v. Baldwin,* 100 Neb. 25, 158 N. W. 371, all of which cases hold that when a person signs an indorsement similar to the one in the present case, the status of the signer is that of an indorser, not a guarantor.

In this situation we are free to follow those courts which have construed this section as we think it ought to be construed. Were there no prior decisions we should not hesitate to construe this section as it was construed in *Mangold & Glandt Bank v. Utterback, supra.*

Had the defendants herein signed only the following statement: "Payment guaranteed" there would be no doubt that they were guarantors. Had they signed only the statement: "Protest waived" there could be no doubt that they were indorsers. They, however, signed both of such statements:

"Protest waived. Payment guaranteed." The language "protest waived," or similar language such as "presentment, demand and notice waived" has no bearing upon the rights and liability of a guarantor, but can properly relate only to the rights of an indorser. In such a situation where ambiguity exists through the failure of the person placing his signature upon the instrument clearly to indicate by appropriate words his intention to be bound other than as an indorser, the statute applies and provides that such person shall be deemed to be an indorser.

Since in our opinion the defendants were indorsers, not guarantors, it is unnecessary to discuss plaintiff's contention that the court erred in holding the guaranty void because no consideration was expressed therein.

The second question to be determined is whether the trial court erroneously found that the agreement of August 12, 1930, was to take effect only in the event that all of the general creditors of the Wagon Works signed it or a similar agreement, and that since all of the general creditors did not sign the agreement, it was void and in no manner affected the rights and liabilities of the defendants who signed the notes as indorsers. We have carefully examined the agreement signed by the plaintiff and the Wagon Works and have concluded that enough language is found in such agreement to warrant the finding and conclusion of the trial court that the agreement was not to be effective unless and until similar agreements were entered into with all of the general creditors of the Wagon Works. While the agreement did not specifically provide that it should be without force or effect unless and until similar agreements had been entered into with all of the general creditors of the Wagon Works, we think it may be said that such was its clear intention. The agreement contained the following language:

"And the persons and corporations hereinafter named and subscribing hereto, parties of the second part, hereinafter called the 'Creditors.' . . .

"Whereas, a creditors' meeting was held . . . for the purpose of protecting all creditors and working with the management for that purpose, and to work out a method for the payment of the existing general creditors, . . .

"Whereas, . . . there is due and owing to general creditors the sum of twenty-four thousand eight hundred thirty and 62–100, . . .

"Whereas, the corporation is desirous to obtain an extension of the time for the payment of its indebtedness and the creditors are willing to grant such extension, . . .

"Whereas, it is desirable to avoid the expenses and delay of court proceedings and necessary waste resulting therefrom;

"Now, therefore, in consideration . . . it is agreed as follows:

"First. The creditors shall and hereby do extend the time of payment, . . .

"Third. This agreement may be executed, for convenience, in a number of counterparts and all such counterparts shall be taken to constitute one agreement."

Since the agreement never became effective on account of the failure of some of the creditors to so agree, we must hold that no valid extension of the time in which the notes herein might be paid was given, and therefore the defendants who were secondarily liable on the notes were not discharged by virtue of the provisions of sec. 117.38 (6).

*By the Court.*—Judgment reversed, with directions to enter judgment in favor of the plaintiff and against the defendants C. H. Ebenreiter and P. W. Frederich for the amounts due and unpaid on the notes herein.