## WINKLE v. SCOTT (two cases).*
### Nos. 11180, 11227.

Circuit Court of Appeals, Eighth Circuit.
Oct. 31, 1938.

*Rehearing denied Nov. 22, 1938.

Gus O. Nations, of St. Louis, Mo. (Feigenbaum, Nations & McCormick, of St. Louis, Mo., on the brief), for appellant.

Arthur E. Simpson, of St. Louis, Mo. (Jeffries, Simpson & Plummer, of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS and BOOTH, Circuit Judges.

THOMAS, Circuit Judge.

On August 11, 1937, the appellant filed his debtor's petition for extension of time under section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, accompanied by a petition for a restraining order against the proposed foreclosure and sale of certain shares of stock of Winkle Mines, Inc., owned by appellant and pledged to the appellee to secure appellant's liability as indorser on notes of the corporation totaling $58,450 in amount. On August 13, 1937, the petition was approved, a restraining order was issued against the appellee and the matter referred to a Referee in Bankruptcy. Thereafter the appellant filed schedules listing nine unsecured creditors and listing Oreon E. Scott, appellee, as his sole secured creditor. On October 7, 1937, the appellant filed his Proposal for Extension of Time together with his Petition for Confirmation Thereof and on the same day the motion of Oreon E. Scott to dissolve the injunction was permitted to be filed for transmittal to the United States District Court. On October 14, appellant filed his answer to the motion to dissolve the injunction, alleging that the above notes contained $15,000 usurious interest as defined by Sec. 2844 of the Revised Statutes of Missouri, 1929, Mo.St.Ann. § 2844, p. 4633; that the pledge of security was invalid under the laws of Missouri; and praying (1) that the motion to dissolve be denied and (2) that the court order Oreon E. Scott to deliver the pledged property to the debtor. The Referee in Bankruptcy approved the debtor's extension proposal and recommended to the District Court that the injunction be dissolved. The appellant filed exceptions and a petition for review and the matter came on for hearing before the District Court. This is an appeal from the decree of that court in which it approved the order of the Referee in Bankruptcy confirming the debtor's extension proposal to his unsecured creditors, dissolved the temporary injunction against the appellee and denied the debtor's prayer for an order upon appellee for the delivery of the pledged property to the appellant debtor.

There is no material controversy regarding the facts involved. The only issues raised here are those regarding interpretations of law. If the charge of

usury can not be sustained the decree must be affirmed. If, however, appellant is correct in his contention that the pledge was void because of usury inhering in the notes the decree should be reversed.

In 1929 Scott indorsed and guaranteed payment of Winkle's promissory note for the principal sum of $36,000 given to the Franklin-American Trust Co. of St. Louis, Missouri. To secure Scott against loss by reason of the guaranty, Winkle pledged to him notes secured by mortgages on coal land in Illinois. When the note matured on January 31, 1932, Winkle defaulted and Scott paid the bank and took over the note.

In 1932, an Illinois corporation styled Winkle Mines, Inc., was organized, and the coal property was conveyed to it by Winkle in exchange for 1,000 shares of its stock and its undertaking to pay the $36,000 note held by Scott. To carry out its obligation to pay said note the board of directors of the corporation at a meeting on July 2, 1932, resolved "that this corporation borrow from Raymond G. Scott (brother of appellee) a sum sufficient to pay said debt of $36,000.00 with interest thereon, and that it pay as a bonus for making said loan, $14,000.00;" and by the resolution the president was authorized to execute five notes of $10,000 each due in successive years from 1933 to 1937. Pursuant to the foregoing resolution five notes aggregating $50,000 were made by the corporation, dated July 2, 1932, signed, "Winkle Mines, Incorporated, by Oliver L. Winkle." The notes were payable to Raymond G. Scott and indorsed by him to appellee. It was stipulated that these "notes were indorsed by Oliver L. Winkle, who by said indorsement waived demand, presentment for payment, notice of non-payment, protest, notice of protest and diligence in bringing suit," and that they "were payable at First National Bank, East St. Louis, Illinois." The only consideration given for them, so far as appears in the record, was the cancellation of Winkle's note for $36,000.

On January 2, 1934, Winkle Mines, Inc., executed new notes in the amount of $58,450, the consideration being the cancellation of the notes given by it on July 2, 1932, plus additional money which had been subsequently advanced to it by the appellee. These notes were made payable to Raymond G. Scott who indorsed them to the appellee sometime prior to this action. They are identical in form with the notes given July 2, 1932, except that they were executed in St. Louis, Missouri. Oliver L. Winkle appears as indorser under a waiver of demand and notice similar to that on the 1932 notes. They were secured by a mortgage executed by Winkle Mines, Inc., on the Perry County, Illinois, property and by the continued pledge of Winkle's stock in the corporation. The pledge gave the holder of the notes the right on default in payment to sell the pledged collateral at public or private sale with or without notice to the public or to the parties interested and provided for the application of the proceeds of the sale to the payment of the above notes; and surplus, if any, was to be paid to Winkle Mines, Inc.

The notes given by the corporation on January 2, 1934, are due and unpaid, both as to principal and interest. Scott advertised the pledged stock of Winkle Mines, Inc. for sale to be held on August 17, 1937.

The substance of appellant's argument is that the notes given on July 2, 1932, executed and payable in Illinois, were usurious because they called for $14,000 more than the amount loaned; that while under Illinois law usury is not available as a defense to a corporation it is available to Winkle, an individual, for the reason that by his indorsement before delivery with waiver of presentment and notice, he became primarily liable and in legal effect a co-maker of the notes. It is further claimed that the usury in the 1932 notes was carried over into the notes executed in Missouri on January 2, 1934, and that the pledge of Winkle's stock to secure their payment was void by virtue of Sec. 2844 of Revised Statutes of Missouri, 1929, Mo. St.Ann. § 2844, p. 4633, which makes pledges of personal property given to secure indebtedness for which usury was exacted invalid and illegal.

The validity of the notes executed on July 2, 1932, and made payable in Illinois must be determined by the laws of that state. Scudder v. Union National Bank, 91 U.S. 406, 23 L.Ed. 245; Missouri, Kansas & Texas Trust Company v. Krumseig, 172 U.S. 351, 19 S.Ct. 179; 43 L.Ed. 474; Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940. If these notes were valid under the laws of Illinois it will be unnecessary to pursue the argument further since it is obvious that the taint of usury attached at that time or

not at all and, if not, all subsequent transactions in respect to them were valid.

By the law of Illinois a corporation may lawfully agree to pay any rate of interest. Chapter 74, Sections 4 and 5, of the Illinois Revised Statutes of 1937 reads as follows:

"§ 4. In all written contracts it shall be lawful for the parties to stipulate or agree that seven (7) per cent. per annum, or any less sum of interest, shall be taken and paid upon every one hundred (100) dollars of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided; Provided, however, with respect to money loaned to or in any manner due and owing from a corporation, the parties may stipulate or agree upon any rate of interest whatsoever, and take and pay the same * * *.

"§ 5. No person or corporation shall directly or indirectly, accept or receive, in money, goods, discounts, or thing in action, or in any other way, any greater sum or greater value, for the loan, forbearance or discount of any money, goods or thing in action, than as above prescribed, except from a corporation * * *."

Under these statutes, Winkle Mines, Inc., the maker of the notes of 1932, could not have challenged them on the ground of usury. The sole remaining question, therefore, is whether Winkle's connection with the notes under the facts set forth made the defense of usury available to him as an individual. If Winkle's position is that of an indorser the notes are free from usury both as to Winkle individually and Winkle Mines, Inc., since the general rule is that where the laws of a state forbid the defense of usury to a corporate borrower, the indorsers, guarantors and sureties of its commercial paper are also precluded from challenging, on that ground, the validity of a corporate obligation governed by the laws of that state. Hubbard v. Tod, 171 U.S. 474, 19 S.Ct. 14, 43 L.Ed. 246; In re International Raw Material Corporation, 2 Cir., 22 F.2d 920; Tennant v. Joerns, 329 Ill. 34, 160 N.E. 160; Union Estates Co. v. Adlon Construction Co., 221 N.Y. 183, 116 N.E. 984, 12 A.L.R. 363; Lane & Co. v. Watson, 51 N.J.L. 186, 17 A. 117, affirmed in Watson v. Lane, 52 N.J.L. 550, 20 A. 894, 10 L.R.A. 784. A corporate obligation executed under a statute forbidding the plea of usury to a corporation validates the contract and the defense will be denied an individual indorser in an action brought against him in another state. Lane v. Watson, supra.

We must, therefore, determine whether Winkle's liability was that of an indorser or that of a co-maker since we assume that the defense of usury would have been available to him as an individual co-maker under the Illinois statutes, supra, even though it is not available to him as an indorser of a corporate obligation.

Prior to the general adoption of the Negotiable Instruments Law the decisions were in confusion as to the liability of a stranger to the instrument who indorsed before delivery. The common law rule was that he was presumed to be a co-maker. Good .v. Martin, 95 U.S. 90, 24 L.Ed. 341; Ryan v. Security Savings & Commercial Bank, 50 App.D.C. 292, 271 F. 366. The Supreme Court of Illinois, however, held that the liability was, prima facie, that of a guarantor. De Clerque v. Campbell, 231 Ill. 442, 83 N.E. 224. The authority of these decisions was abrogated by the adoption of the Negotiable Instruments Law which provides that "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed an indorser, unless he clearly indicated by appropriate words his intention to be bound in some other capacity." Ill.Rev.Stat.1937, c. 98 § 83. This provision has been given a literal interpretation by the courts. Murray v. Third National Bank, 6 Cir., 234 F. 481; First Nat. Bank v. Yakey, 253 Ill.App. 128; 10 C.J.S., Bills and Notes, § 39, p. 467, note 80(1). In Murray v. Third National Bank, supra, the court stated [page 485] that "we think it clear that * * * one who signs in form as an indorser cannot be held liable as primary debtor, either sole or joint, unless he has 'in appropriate language, used for that express purpose, indicated an intention to be bound in some other capacity,' and that such intention is 'not to be inferred from conduct or from language that is equivocal, much less from that which is consistent with an intent to assume only the secondary liability of an indorser, and not the primary liability of a maker.' McDonald v. Luckenbach [3 Cir.,], 170 F. 434, 437."

Winkle, therefore, must be held to have signed as an indorser unless the waiver of demand and notice indicated his in-

303

tention to be bound in some other capacity. We are not referred to any decisions by the Illinois court on this point. However, it has been held that such waiver does not express an intention to be bound other than as an indorser. Hoosier Mut. Ins. Co. v. Citizens' Trust & Savings Bank, 89 Ind. App. 5, 165 N.E. 446; M. J. Wallrich Land & Lumber Co. v. Ebenreiter, 216 Wis. 140, 256 N.W. 773. It is to be presumed that the Illinois Supreme Court would follow the construction given the statute in other states. Winkle's position on the notes is, therefore, that of an indorser, and in view of the foregoing we do not believe that there is any force in appellant's argument that, since by the waiver Winkle became absolutely obligated to pay them, he thereby became a co-maker. The argument is apparently based on the provision in the Negotiable Instruments Law, Ill.Rev.Stat.1937, c. 98, § 214, that "The person 'primarily' liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are 'secondarily' liable." The appellant's contention cannot be sustained. The fact that Winkle is absolutely obligated to pay the debt does not change the character of his obligation on the instrument. He remains "secondarily" liable. While the effect of the waiver relieved his obligation of the usual conditions necessary to its enforcement his position as indorser remained valuable because if he were required to pay he was entitled to recover from the maker. In re Buzzini & Co., Inc., D.C., 183 F. 827; Corley v. French, 154 Tenn. 672, 294 S.W. 513; State Nat. Bank of Fort Worth v. Vickery, Tex.Com. App., 206 S.W. 841; Aven v. Ellis, 334 Mo. 449, 66 S.W.2d 828. "The terms 'primary and secondary,' when they apply to the parties to an obligation, 'refer to the remedy provided by law for enforcing the obligation, rather than to the character and limits of the obligation itself.' Kilton, Warren & Co. v. Prov. Tool Co., 22 R.I. 605, 48 A. 1039." Northern State Bank of Grand Forks v. Bellamy, 19 N.D. 509, 125 N.W. 888, 890, 31 L.R.A.,N.S., 149. In the last cited case the court held that a guaranty of payment indorsed on a note, while creating an absolute obligation to pay, did not make the guarantor a "primary" party and that since his liability remained "secondary" he was released by an extension of time to the maker of the note.

The notes given on July 2, 1932, were therefore not usurious either as to Winkle Mines, Inc., the maker, or to Winkle, the indorser, and since there was legal consideration for the notes executed in Missouri on January 2, 1934, the appellant has no standing to challenge the validity of the collateral pledge of the stock of Winkle Mines, Inc., given as security.

We have given no consideration to the argument in appellant's brief that Winkle Mines, Inc. was organized as a cloak to cover a usurious transaction because that issue was not raised by the pleadings and we must accordingly regard the notes as a bona fide obligation of the corporation.

It follows that, since the appellant's extension proposal referred only to his unsecured creditors and did not include Scott, his only secured creditor, the decree of the District Court dissolving the temporary restraining order and denying the appellant's prayer for the delivery of the pledged property to him was correct. Brennan v. Home Owners' Loan Corp., 67 App.D.C. 12, 89 F.2d 231.

Affirmed.