ZUEHLKE, Respondent, vs. ENGEL, Defendant : KALLIES and others, Appellants.

*October 10—December 6, 1938.*

388

For the appellants there was a brief by *Wallrich & Aschenbrener* of Shawano, and oral argument by *Matthew M. Wallrich*.

For the respondent there was a brief by *Fischer, Brunner & Strossenreuther* of Shawano, and oral argument by *L. J. Brunner* and *O. Strossenreuther*.

FAIRCHILD, J.   The words "for value received we hereby guarantee the payment of the within note at maturity or any time thereafter with interest at the rate of seven per cent per annum until paid" are appropriate to express an intention to be bound as guarantors, and persons signing such an undertaking have not signed as indorsers.   The additional words "waiving demand of payment, protest and notice of protest" do not change the character of the contract.   The controlling language is practically identical with that held to be a contract of guaranty in *Farmers State Bank v. Hansen* (1921), 174 Wis. 100, 182 N. W. 944.

The trial court was of the opinion that the defendants were bound as indorsers under the rule of *M. J. Wallrich Land & Lumber Co. v. Ebenreiter* (1934), 216 Wis. 140, 142, 256 N. W. 773.   But the only words used in the agreement in that case were, "Protest waived.   Payment guaranteed."   The consideration not having been expressed, no valid guaranty existed under the statute of frauds, sec. 241.02, Stats., and the defendants were held to be indorsers under the Negotiable Instruments Law, sec. 116.68, Stats., because they had placed their names upon the back of the note and had not indicated by appropriate words an intention to be bound in some other capacity.   In the present case the consideration is expressed, and there is a provision for interest at a different rate per annum than that provided for in the note

itself. The signers having written out their contract in some detail, they cannot be presumed to have intended to be bound as indorsers.

But as we view the present case, the determination as to whether the contract is one of guaranty or of indorsement is not of controlling importance. The trial court, having reached the conclusion that the writing in question constituted an indorsement, was of the opinion that the running of the statute of limitations was interrupted by payments made by the maker with the consent of the indorser. The principal controversy in the briefs submitted upon this appeal has centered about the question whether the trial court erred in concluding that the defendants were indorsers. It seems to have been assumed that the fortunes of the parties to this appeal depend upon the proper ascertainment of the status of the defendants. As we view the case, the result must depend upon whether the defendants are jointly bound with the maker of the note in question.

In dealing with the subject of guaranty there is a difficulty of nomenclature with which this case does not require us to deal other than to point out the difficulty. The words "guarantor" and "surety" are used by the courts without too much discrimination, to describe the various aspects of the security transaction by which one person pledges his personal credit in support of the debt of another. This relationship arises in various ways. Sometimes the surety is a joint maker with his principal debtor of the obligation sued upon. At other times, he undertakes to pay the debt of another if that other does not pay it, under circumstances which create a several liability, whether this liability be on the same instrument as that creating the principal obligation, or on a separate instrument.

As indicated in *Bishop v. Genz* (1933), 212 Wis. 30, 248 N. W. 771, for the purposes of the statute of limitations the important question is whether the obligation assumed is

joint or several. The rule that payment made on a note by the principal debtor before limitations have run serves to keep the debt alive both as to principal and as to surety is based upon the fact that both are joint promisors, rather than upon the fact that one is principal and the other surety. If the obligors are jointly bound, there is but one obligation, and the view of the common law was that either of the joint obligors by making payments could toll the statute as to the entire obligation.

It was found necessary, in order to relieve nonconsenting joint obligors, to enact statutes providing that payments by one joint contractor should not cause the other to lose the benefit of the statute of limitations, sec. 330.47, Stats. Upon this statute the courts have engrafted the doctrine that where one joint obligor consents to or requests the other to make a payment, the statute is tolled as to the person so consenting. *Coleman v. Ward* (1893), 85 Wis. 328, 55 N. W. 695; *State Bank of West Pullman v. Pease* (1913), 153 Wis. 9, 139 N. W. 767; *Bergmann v. Roll* (1928), 195 Wis. 120, 217 N. W. 746.

One whose liability is several and not joint is not affected by the foregoing doctrine. His liability is not upon the principal debt but upon his own separate undertaking, and a payment by the maker or principal debtor upon the principal debt, even with the consent or acquiescence of the indorser or guarantor, has no effect whatever upon the collateral undertaking. This was pointed out in *Wachovia Bank & Trust Co. v. Clifton* (1932), 203 N. C. 483, 166 S. E. 334; *In re Thomson* (1926), 59 Ont. L. R. 449, 4 D. L. R. 755, affirmed in 60 Ont. L. R. 165. In the present case, regardless of whether the defendants were indorsers or guarantors, their liability is several rather than joint, and is therefore not affected by the payments of the maker, even though they consented to or acquiesced in such payments. It follows that the defendants must prevail upon this appeal unless they may

be held to be estopped to plead the statute, as the plaintiff contends.

Bearing in mind that the liability of the guarantor is upon a separate contract, we cannot say that the payee is likely to be misled by the mere acquiescence of the guarantor in a payment by the maker. The amended complaint sets forth that Kallies, Dallman, and Genke induced payment on various occasions by instructing, directing, and requesting Louis Engel to pay interest and to reduce the principal amount as quickly as possible, and that immediately thereafter Engel made payments. But the complaint alleges no facts showing that the guarantors made the principal debtor their agent to make payments affecting their liability as guarantors as distinguished from the liability of the principal debtor. There is no allegation of a promise by any of the guarantors to the payee, and there is no allegation of a representation made or a position assumed by the guarantors, on which the payee had a right to rely in refraining from beginning an action on the guarantors' contract.

Since nothing appears to have been done by any of the guarantors that can in fairness be said to constitute a waiver by them of the running of the statute, the demurrer should have been sustained.

*By the Court.*—Order reversed, and cause remanded for further proceedings according to law.