### BARR et al. v. HUITT.
### No. 10027.

Court of Civil Appeals of Texas. Galveston. Nov. 9, 1934.

Davant, Harris & Wilson, of Bay City, for appellants.

Charles V. Yeamans, of Bay City, and Armstrong, Cranford, Barker & Bedford, of Galveston, for appellee.

LANE, Justice.

This suit was brought by J. F. Huitt against J. J. Barr and his wife, Emma R. Barr, H. V. Barr, son of Mr. and Mrs. Barr, and. D. M. Green, to recover a balance 'due upon a promissory note for $2,000 of date March 3, 1928, signed by J. J. Barr, Emma R. Barr, D. M. Green, and H. V. Barr in the order named, payable to J. F. Huitt on the 3d day of March, 1930. Said note provides for the` 10 per cent. additional on principal. and interest then due as attorney's fees, if placed in the hands of an attorney for collection after maturity, or if suit is brought on it for collection.

Plaintiff alleged that simultaneously with the execution and delivery of said note, and to secure its payment when due, the defendants J. J. Barr and Emma R. Barr executed and delivered to Howard Campbell, as trustee, a deed in writing, wherein and whereby they conveyed to Campbell as such trustee for the benefit of the plaintiff certain three lots or parcels of land situated in Matagorda county, Tex.; that it was provided in said deed "that in case of default in the payment of said note when due * * * the trustee is authorized * * * upon request of the payee * * * to * * *_ sell the same at public outcry to the highest bidder for cash * * * and make to the purchaser thereunder a good and sufficient deed conveying a fee simple title to him of said lots * * * and to apply the proceeds of such sale * *. * first, to the payment of the costs and expenses of sale; * * * second, to the payment of the principal and interest due on said note; and third, the balance, if any, to the grantors."

Plaintiff further alleged that, as default had been made in the payment of said note,

the trustee in said deed of trust in due and lawful manner, and as provided in said deed of trust, sold said lots to plaintiff for $800, and that said lots were, by said trustee, conveyed to plaintiff, and that the proceeds of such sale were applied as provided by the terms of said deed of trust; that, after payment of the things directed to be paid by the deed of trust other than the sum due on the note, there remained the sum of $552.92, which was entered as a credit upon the note; after entering such credit, there remained due to plaintiff on the note the sum of $1,447.08.

Plaintiff alleges that he was obliged to place the note in the hands of an attorney for collection to whom he has agreed to pay the attorney's fee stipulated in the note.

Plaintiff's prayer was for the balance due on the note, for attorney's fee, and general relief.

D. M. Green and H. V. Barr filed an answer, but, as neither of them is a party to this appeal, it is unnecessary to state the nature of their answers.

Defendants J. J. and Emma R. Barr by answer admitted the execution and delivery of the note in controversy and the deed of trust, but alleged that they signed the note as sureties only; that at the time of the execution of the note plaintiff knew that they had signed it as sureties only; that they never received any of the money loaned by plaintiff, nor were they in any manner interested in said money loaned; "that after the maturity of said note, payee, without the consent of said defendants, J. J. Barr and Emma R. Barr, for a valuable consideration, agreed with the principal makers to extend and did extend the time of payment of said note from time to time. That on January 5, 1932, payee, without the knowledge or consent of these defendants, for a valuable consideration, entered into an agreement with said principal makers to extend the time of payment of said note to September 3, 1932. That by reason of said unauthorized extensions of the time of payment of said note, the defendants, J. J. Barr and Emma R. Barr, were discharged of all liability thereon."

J. J. Barr and Emma R. Barr prayed they be released as to all liability on the note, and by cross-bill alleged that the sale of the trustee, Howard Campbell, of the three lots of land described in the plaintiff's petition covered by the deed of trust mentioned, was invalid and void, because they, J. J. and Emma R. Barr, grantors in the deed of trust, had before such sale been released from liability on the note described in said deed of trust, in that plaintiff, the payee of said note, had several times prior to said sale of the property covered by the deed of trust granted extensions of the time of payment of said note secured by said deed of trust; that such extensions were made without the consent of these defendants; that they are the owners of said property; that plaintiff is claiming title to said property under and by virtue of said invalid and void sale and deed. Defendants' prayer was that this trustee's sale be decreed a nullity; that title and possession of the property in controversy be restored to these defendants; for removal of the cloud cast upon the title to the property by reason of said trustee's sale and deed.

By supplemental petition plaintiff denied generally the allegations of the answers of all defendants, except that they executed and delivered the note to him, and specially alleged that defendants, J. J. and Emma R. Barr, were principal obligors and not sureties on the note, and that every extension of time of payment of the note was granted at the special request of J. J. Barr and with his unqualified assent thereto; that on the night before the property was sold J. J. Barr applied for an extension of the time of payment of the note.

The case was tried before the court without a jury, and a personal judgment was rendered in favor of the plaintiff against J. J. Barr, H. V. Barr, and D. M. Green for the sum of $1,447, together with 8 per cent. interest per annum thereon from November 3, 1932, and for $144.70 as attorney's fee, with interest thereon at the rate of 8 per cent. per annum, but refusing plaintiff any personal judgment against Mrs. Emma R. Barr. Judgment was also rendered that defendants J. J. Barr and Emma R. Barr take nothing on their cross-action and plea in reconvention, and that the title and possession of plaintiff in the real property in controversy be in all things established and confirmed.

J. J. Barr and Emma R. Barr only have appealed from the judgment so rendered to this court.

By their first proposition appellants insist that the court erred in holding that appellants were principals on the note in controversy, in that the money loaned, as evidenced by said note, was made for the exclusive use and benefit of D. M. Green and H. V. Barr, and that appellants received no part of the money loaned, all of said facts being known to appellee prior to and at the time

of the execution and delivery of the note sued on; and by their second proposition they insist that, since it was shown that appellants were sureties on the note and not principals, and since it was shown that appellee, Huitt, granted to D. M. Green and H. V. Barr valid and binding extensions of the time of payment of said note without the consent of appellants, and with knowledge that they executed the note as accommodation sureties, appellants were discharged from any obligation to pay upon said note.

We overrule both contentions. J. F. Huitt, appellee, testified that D. M. Green and H. V. Barr, son of J. J. Barr and Emma Barr, were trying to borrow money all over town and from him, and that he told them he would not let them have it because they had no security; that Green and H. V. Barr were partners in business; that they told him to go see J. J. Barr; that he would borrow the money and let them have it; that he saw J. J. Barr and said to him: "Isn't that a pretty big loan to let them boys have," and that J. J. Barr said: "I think that's all right. I am willing to borrow that money and let them have it in their business; they have got plenty of notes but they have got no money and need money in their business, and I want to borrow it for them"; that H. V. Barr, son of J. J. Barr, said to him that he (J. J. Barr) would borrow the money and let him and Green have it; that D. M. Green and H. V. Barr never borrowed a dollar from him on that deal; that J. J. Barr borrowed the money to let the boys have it; that J. J. Barr told him that he was borrowing the money to let the boys have it; that J. J. Barr told him that was what he wanted it for when I loaned the money to him; that he paid the $2,000 to J. J. Barr.

There was introduced in evidence an affidavit signed by J. J. Barr and Emma R. Barr reading as follows: "Before me, a Notary Public, in and for said County, State of Texas, on this day personally appeared J. J. Barr and Emma R. Barr, to me well known, and who, after being by me duly sworn, deposes and says that Whereas we are this day obtaining a loan of Two Thousand Dollars from J. F. Huitt, giving him our note secured by a deed of trust covering Lots 3, 4, and 5 in Block 49 in the town of Palacios, Matagorda County, Texas, * * * we make this affidavit to induce said J. F. Huitt to make said loan. Witness our hands this 3rd day of March, A. D. 1928."

The note in controversy contained the following recitation: "This note, to the extent of the amount herein mentioned, represents money this day borrowed by us from the said J. F. Huitt, and, to secure the credit thus extended we have this day, by one certain deed of trust conveyed the following lot and parcel of land."

J. F. Huitt further testified that immediately after the note fell due he went to see J. J. Barr, and tried to get him to pay it, and told him that he would not extend it any longer, and that he was going to sell the property covered by the deed of trust if Barr did not pay him $100 every six months, and that J. J. Barr said it was all right, that they would give him $100 every six months if he would extend it, and that they paid him $100, and then he extended payment of the note.

Testifying further, Huitt said: "I told them I wouldn't extend it if they didn't pay a hundred dollars every six months, and they said they would do it, if I would extend it; I went to old man Barr and I went to the boys for it, and they all agreed to do that."

He testified that he advertised the property covered by the deed of trust for sale three times before it was sold, and that J. J. Barr came and got him not to sell it and said to him: "I just can't get the money and I can't pay it * * * but if you will give me time I will pay it." He testified that Green and H. V. Barr paid him the interest one time; that he had been "extending it for six months at a time for them on account they said they just couldn't raise the money; I would go to Mr. Barr and he would say: 'Don't close it, because it won't bring nothing' and I helped him just as much as I possibly could, and I kept on extending it for him to keep him from losing his property; I didn't want the property and I did everything I could to help him out, and it seemed like the more I tried to help him the worse it got, and I found out that the taxes weren't paid last year, and the property was rotting down and needed painting badly, and he wouldn't keep the building up at all"; that he at no time or place agreed to extend the time for payment of the note without the consent of J. J. Barr; that J. J. Barr told him that he would like to extend the note; that he could not pay it at that time.

J. J. Barr testified that he got the $2,000 to turn it over to the boys. H. V. Barr testified that he spoke to his father, J. J. Barr, about extending the time of payment of the note, and he said nothing, he left that to us, he did not object to such extension, he did not tell me not to get such extension;

that his father was leaving the matter of getting such extension to him and D. M. Green; that the $2,000 was paid by the check of Mr. Huitt, payable to, and given to, his father, J. J. Barr.

The undisputed evidence shows that J. J. Barr in person received every dollar of the $2,000 loaned; such constituting value received for the execution of the note as principal.

■ Section 29 of the Negotiable Instruments Law (article 5933, R. S. 1925) defines an accommodation party as one who has signed the instrument as maker, drawer, acceptor, or indorser without receiving value therefor.

In order that one may avail himself of the defense of an accommodation maker under the provisions of the statute above mentioned, he must not be the recipient of any consideration deemed valuable in law. Commonwealth National Bank v. Goldstein (Tex. Civ. App.) 261 S. W. 538; Exum v. Mayfield (Tex. Civ. App.) 286 S. W. 481; Waller v. Gorman Mercantile Co. (Tex. Civ. App.) 141 S. W. 833; Brinker v. Bank (Tex. Civ. App.) 16 S.W.(2d) 965.

■ It cannot be reasonably held under the facts shown in this case that J. J. Barr, the recipient of the $2,000 from Huitt as a loan made to him by Huitt, after Huitt had refused to make such loan to Green and young Barr, that J. J. Barr did not receive any consideration deemed valuable in law for executing the note in controversy.

Such being true, discussion of other complaints of appellant become unnecessary.

■ If, however, it should be held that J. J. Barr did not receive anything deemed valuable in law, and that he may be considered an accommodation maker only, the evidence supports a finding that he consented to the extension of the time of payment of the note sued upon, and therefore he was not entitled to a discharge of liability on the note sued upon.

The findings of the trial court that J. J. Barr and Emma R. Barr were principal makers of the note sued on and that the extension of the time of payment of the note was made at the request and with the consent of J. J. Barr and wife are amply supported by the evidence, and therefore it becomes our duty to affirm the judgment, and it is accordingly so ordered.

Affirmed.